**In the Matter of: Edward Harold THOMAS, f/d/b/a Rabbithead Farms, Debtor.**

**Harold THOMAS, Plaintiff,**

v.

**RALSTON PURINA COMPANY; William M. Flatau, Trustee; U.S.D.A., Farmers Home Administration; and Federal Land Bank, Defendants.**

**Bankruptcy No. 83–30115–Ath. Adv. No. 83–3054.**

United States Bankruptcy Court, M.D. Georgia, Athens Division.

Sept. 17, 1984.

Ernest V. Harris, Nicholson, DePascale, Harris & McArthur, Athens, Ga., for debtor.

Lillian H. Lockary, Asst. U.S. Atty., Macon, Ga., for United States of America.

J.D. Smith, Jr., Kenyon, Hulsey, Oliver, Smith & Mahar, Gainesville, Ga., for Ralston Purina Co.

William M. Flatau, Brown, Katz, Flatau & Hasty, Macon, Ga., trustee.

MEMORANDUM OPINION ON COMPLAINT TO AVOID TRANSFER; TO RECOVER PROPERTY; AND TO DETERMINE THE EXTENT AND VALIDITY OF LIEN

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

STATEMENT OF THE CASE

On April 15, 1983, Edward Harold Thomas, f/d/b/a Rabbithead Farms, Debtor, filed with this Court his petition under Chapter 7 of the United States Bankruptcy Code. On May 17, 1983, Debtor filed a "Complaint to Avoid Transfer; to Recover Property; and to Determine the Extent and Validity of Liens." Named as defendants in the complaint are the Ralston Purina Company; William M. Flatau, trustee of Debtor's bankruptcy estate (hereinafter Trustee); the United States Department of Agriculture, Farmers Home Administration (hereinafter FmHA); and the Federal Land Bank. The complaint alleges that the Ralston Purina Company filed a garnishment proceeding against Debtor as defendant and Dairymen, Inc. as garnishee, and as a result of the garnishment, Dairymen, Inc. paid $18,983.22 into the registry of the State Court of Dekalb County, Georgia. The money is presently held by the Trustee in a trust account. Debtor asserts that the transfer is voidable as a preference and that he is entitled to a portion of the $18,983.22 as exempt property. Debtor further asserts that he is entitled to the remainder of the $18,983.22 under sections 507(3),[1] 506(c),[2] and 503(b)[3] of the Bankruptcy Code.

On June 6, 1983, the Trustee filed his "Answer, Counterclaim and Crossclaim." In his counterclaim, the Trustee asserts that Debtor is not entitled to any money under sections 507(a)(3), 506(c), and 503(b). In his cross-claim against the Ralston Purina Company, the Trustee seeks to avoid, as preferential, the transfer of the $18,983.22 to the state court registry. In his cross-claims against FmHA and the Federal Land Bank, the Trustee asserts that under section 544,[4] he holds a superior interest in the $18,983.22.

On June 15, 1983, FmHA filed its answer to Debtor's complaint and to the cross-claim of the Trustee. FmHA also filed a counterclaim against Debtor. In its pleadings, FmHA asserts that it has a perfected security interest in the $18,983.22 and that Debtor has no equity in the money. FmHA requests that the money be abandoned and that FmHA be granted relief from the automatic stay. FmHA also filed a cross-claim against the Trustee, in which FmHA requests an order requiring the Trustee to turn over to it the $18,983.22.

On August 18, 1983, the Court entered a "Consent Judgment Against Ralston Purina Company," which resolved the Trustee's

---

1. Debtor cites the Court to § 507(3) of the Bankruptcy Code. The Court will assume that Debtor intended to cite § 507(a)(3), 11 U.S.C.A. § 507(a)(3) (West 1979).

2. 11 U.S.C.A. § 506(c) (West 1979).

3. 11 U.S.C.A. § 503(b) (West 1979).

4. 11 U.S.C.A. § 544 (West 1979).

cross-claim against the Ralston Purina Company. In the consent judgment, the Court voided the preferential transfer made to the state court and declared the $18,983.22 free from any judgment lien held by the Ralston Purina Company. On September 26, 1983, the Court entered a similar consent judgment against the Ralston Purina Company on Debtor's complaint. Also on September 26, 1983, the Court entered a default judgment against the Federal Land Bank on the Trustee's cross-claim, which default judgment voided any security interest held by the Federal Land Bank in the $18,983.22. Debtor has never moved the Court for entry of a default judgment against the Federal Land Bank.

The remaining issues came on for trial, and the Court, having considered the evidence presented at trial and the arguments and briefs of counsel, now publishes its findings of fact and conclusions of law.

### FINDINGS OF FACT

The facts of this adversary proceeding are, for the most part, undisputed. Debtor operated a dairy farm located in Morgan County, Georgia. To finance his farming operation, Debtor obtained several loans from FmHA and executed promissory notes to evidence the indebtedness. To secure the promissory notes, Debtor executed security agreements in favor of FmHA and granted to FmHA a second lien on the Morgan County farmland. The security agreements granted to FmHA a security interest in:

> All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto ....

FmHA filed a financing statement on May 9, 1979, and filed an amendment to the financing statement on October 30, 1981.

In the regular course of his farming operation, Debtor sold milk to Dairymen, Inc. In late 1981, Debtor, FmHA, and Dairymen, Inc. executed an "Assignment of Proceeds from the Sale of Dairy Products and Release of Security Interest." Under the terms of the assignment, $6,104.00 of Debtor's monthly milk sales to Dairymen, Inc. was to be withheld by Dairymen, Inc. and paid to FmHA. FmHA then was to apply the $6,104.00 to reduce Debtor's debt with FmHA. At an undisclosed time, Debtor also assigned $565.00 of his monthly milk proceeds from Dairymen, Inc. to the Federal Land Bank.

In the summer of 1982, Debtor told Mr. William S. Coley, Jr., the FmHA county supervisor for Morgan County, that he was experiencing financial troubles. Thereafter, for several months, Mr. Coley returned to Debtor all or part of the milk proceeds that were paid by Dairymen, Inc. to FmHA. This enabled Debtor to pay farm expenses and purchase feed. In September 1982, Mr. Coley asked that Debtor care for a number of cows owned by Mr. Jerry Sanders. The request was made because Mr. Sanders was experiencing severe financial difficulties and was unable to care for his cows. Debtor agreed to feed and care for the cows in return for the milk produced by the cows. Also in September of 1982, Debtor asked Mr. Coley to formally release the assignment through April of 1983. Debtor and Mr. Coley discussed Debtor's financial troubles, and they discussed the sale of Debtor's assets and possible bankruptcy. Mr. Coley then agreed to release the assignment through April of 1983 so that Debtor could continue to operate the dairy farm in an effort to salvage it. In a letter dated September 22, 1982, Mr. Coley informed Dairymen, Inc. that FmHA had released the milk assignment through April of 1983. On the same day, Debtor assumed the obligation of Mr. Sanders to FmHA and took title to Mr. Sanders' cows.[5] After the release, Debtor began to receive the proceeds directly from Dairymen, Inc.

---

5. The amount of the assumption was approximately $130,000.00.

Debtor's last payment from Dairymen, Inc. was on March 15, 1983. This occurred because the Ralston Purina Company filed a garnishment action against Debtor and Dairymen, Inc. Because of the garnishment, Dairymen, Inc. paid $18,983.22 into the registry of the State Court of Dekalb County, Georgia.[6] But for the garnishment, Debtor would have received the $18,418.22 from Dairymen, Inc.[7] After the garnishment, Debtor was no longer able to feed his cows, and at the request of FmHA, Debtor sold his cows. The sale of the cows resulted in $70,000.00 being paid to FmHA to reduce its claim. Debtor worked approximately three days preparing the cows for sale and incurred expenses for labor. Debtor was not reimbursed by FmHA for his labor or expenses, although FmHA did pay for transporting the cows to market. Shortly after the sale of Debtor's cows, Debtor filed his bankruptcy petition.

Debtor claims in his schedules $5,200.00 of the $18,983.22 as exempt property, and the Trustee states that he has no objection to the claimed exemption.[8] No creditors have objected to the claimed exemption.

## CONCLUSIONS OF LAW

Debtor executed several security agreements granting to FmHA a security interest in "All livestock" and "other farm products." Under O.C.G.A. § 11–9–109(3) (Michie 1982), milk is specified to be a farm product. When the milk upon which FmHA holds a lien is sold, the security interest in the milk attaches to the proceeds. O.C.G.A. § 11–9–306(2) (Michie 1982).

Debtor and the Trustee argue that the "Assignment of Proceeds from the Sale of Dairy Products and Release of Security Interest" executed in late 1981 had the effect of releasing FmHA's lien on the milk and its proceeds.[9] It is also argued that Mr. Coley's agreement to release the assignment operated as a waiver of FmHA's security interest in the milk proceeds. The Court concludes that FmHA released its security interest in the milk proceeds when Mr. Coley sent the September 22, 1982, letter, which stated that FmHA had agreed to release the assignment through April of 1983. Since the $18,983.22 in milk proceeds at issue in this adversary proceeding was realized after the assignment was released, the Court need not decide whether the "Assignment of Proceeds from the Sale of Dairy Products and Release of Security Interest" served to release FmHA's security interest in the milk proceeds.[10]

Under O.C.G.A. § 11–9–306(2), FmHA's security interest in milk attached to the milk proceeds when the milk was sold. However, the legal effect of that section may be altered by agreement of the parties. O.C.G.A. § 11–1–102(3) (Michie

---

6. The $18,983.22 is now held by the Trustee in a trust account.

7. A $565.00 milk assignment owing to the Federal Land Bank was paid by Dairymen, Inc. into the registry. A default judgment has been entered against the Federal Land Bank in this adversary proceeding as to that sum in favor of the Trustee.

8. The Trustee, however, states that if Debtor is entitled to the exemption, the Trustee is entitled to a part of the $5,200.00 exemption under 11 U.S.C.A. § 522(k) (West 1979) and 11 U.S.C.A. § 506(c) (West 1979).

9. The document provides: "In consideration of the acceptance of this assignment by the above-named Purchaser the FHA hereby releases any lien or security interest it has or may have in dairy products sold by Borrower to, by, or through Purchaser." Several courts have addressed the issue of whether this provision oper-

ates to release FmHA's lien on milk proceeds. See *United States v. Beattie (In re Beattie)*, 31 Bankr. 703 (Bankr.W.D.N.C.1983); *In re Liles and Raymond*, 24 Bankr. 627 (Bankr.M.D.Tenn. 1982). *See also Raley v. Milk Producers, Inc.*, 90 N.M. 720, 568 P.2d 246, 22 U.C.C.Rep.Serv. 805 (N.M.Ct.App.1977); *In re Thomas*, 38 Bankr. 50 (Bankr.D.N.D.1983).

10. Even if FmHA waived its security interest in the milk proceeds by the execution of the "Assignment of Proceeds from the Sale of Dairy Products and Release of Security Interest," FmHA may still have acquired a security interest in the $6,104.00 in monthly proceeds that was assigned to it. *See In re Cawthorn*, 33 Bankr. 119 (M.D.Tenn.1983) (approved report of George C. Paine II, Standing Master); *In re Liles and Raymond*, 24 Bankr. 627 (Bankr.M.D.Tenn. 1982).

1982). Under O.C.G.A. § 11–1–201(3) (Michie 1982), an agreement may be inferred from a course of dealing. Accordingly, a party can waive his security interest by subsequent behavior. *See, e.g., Westinghouse Credit Corp. v. Shelton*, 645 F.2d 869 (10th Cir.1981); *United States v. Greenwich Mill & Elevator Co.*, 291 F.Supp. 609 (N.D.Ohio 1968); *National Livestock Credit Corp. v. Schultz*, 653 P.2d 1243, 34 U.C.C. Rep.Serv. 317 (Okla. Ct.App.1982); *Mack Financial Corp. v. Moore (In re Moore)*, 13 Bankr. 914 (Bankr.D.Or.1981).

■ A "waiver" is an "intentional or voluntary relinquishment of a known right." Black's Law Dictionary 1417 (5th rev.ed. 1979). *See also Southern Life Insurance Co. v. Citizens Bank*, 91 Ga.App. 534, 86 S.E.2d 370 (1955). Mr. Coley testified that he released the assignment so that Debtor could use all of the milk proceeds to pay bills, to buy feed, and to pay other farm expenses. Mr. Coley knew that the proceeds would be used to make payments to other creditors, and Mr. Coley did not require Debtor to account for his use of the proceeds. Mr. Coley, therefore, did not expect the proceeds to continue to be FmHA's security after the assignment was released. In the Court's opinion, the release of the assignment constituted a waiver of FmHA's security interest in the milk proceeds.[11]

■ FmHA argues that the release of the assignment was revocable by FmHA and that the release therefore would not terminate FmHA's security interest in the proceeds. The Court first notes that FmHA agreed with Debtor to release the assignment through April 1983.[12] Also, the evidence in this adversary proceeding reveals that no notice was given by FmHA to Debtor or Dairymen, Inc. that FmHA was reinstating its assignment.[13] Thus, even if the release of the assignment was revocable by FmHA, it did not properly reinstate the assignment.

■ FmHA also argues that any release of FmHA's security interest in milk proceeds by Mr. Coley was beyond the scope of his authority and not binding on FmHA. *See United States v. R&D One Stop Records, Inc.*, 661 F.2d 433 (5th Cir., 1981). FmHA admits that the milk proceeds are normal income security of FmHA as defined in 7 C.F.R. § 1962.17(b) (1984). That section provides: "*Normal income security.* This is all security not considered basic security including crops, livestock, poultry, products, and other property covered by FmHA liens which are sold in operating the farm or other business. . . ." Section 1962.-17(b) further provides: "County Supervisors may release normal income security when the property has been sold or exchanged for its present market value and the proceeds are used for one or more of the following purposes . . . ." Section 1962.17(b) lists numerous instances in which normal income security may be released by a county supervisor. The reasons include: to enable the borrower to pay taxes, to enable the borrower to make payments to preserve other FmHA security, and to enable the borrower to "make payments on debts owed to other creditors and

11. The Court notes that the security agreements provide: "Failure by the Secured Party to exercise any right . . . shall not be construed as a waiver . . . ." *See Trust Co. v. Montgomery*, 136 Ga.App. 742, 222 S.E.2d 196 (1975). This adversary proceeding concerns an affirmative act of FmHA to release its security interest in milk proceeds. To construe the clause above to preclude a waiver by affirmative acts would be inconsistent with 7 C.F.R. § 1962.17 (1984), which allows a FmHA county supervisor to release chattel security.

12. Mr. Coley formally released the assignment on September 22, 1982, the same day that Debt-

or assumed Mr. Sanders' obligation with FmHA. The informal release of the milk assignment in the summer of 1982 is also closely allied with Debtor's initial agreement to care for Mr. Sanders' cows. Although the evidence is not clear, the assumption may have been consideration for FmHA's agreement to release the assignment through April of 1983.

13. Under Georgia law, if the parties to a contract mutually depart from the terms of the contract, there must be notice by a party before that party can insist on strict compliance with the terms of the original contract. O.C.G.A. § 13–4–4 (Michie 1982).

to make purchases or to meet expenses not otherwise covered in this section ...." 7 C.F.R. § 1962.17(b)(9) (1984). At trial, Mr. Coley testified that the assignment was released to enable Debtor to pay his electric bills and to purchase feed for his cows. Mr. Coley further testified that he thought that releasing the assignment was in the best interest of Debtor and FmHA. Given this uncontradicted testimony of Mr. Coley, the Court cannot find that he acted outside the scope of his authority in releasing FmHA's security interest in the milk proceeds. Because FmHA does not have a security interest in the $18,983.22, the Trustee's interest in the $18,983.22 is superior to that of FmHA under 11 U.S.C.A. § 544 (West 1979).[14]

■ The Court, having determined that the Trustee's interest in the $18,983.22 is superior to that of FmHA, now will turn to Debtor's contention that he can exempt $5,200.00 of the $18,983.22. Section 522(g) of the Bankruptcy Code provides that the debtor may exempt certain property recovered by the trustee. That section provides:

Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property; or

(2) the debtor could have avoided such transfer under subsection (f)(2) of this section.

11 U.S.C.A. § 522(g) (West 1979). In this adversary proceeding, the Trustee has avoided the transfer to the state court under 11 U.S.C.A. § 547 (West 1979),[15] and the Trustee has established that under 11 U.S.C.A. § 544 (West 1979), his interest in the $18,983.22 is superior to that of FmHA. Thus, the Trustee's recovery is made under 11 U.S.C.A. § 550 (West 1979), and section 522(g) is applicable to this adversary proceeding. The transfer to the state court was the result of a garnishment and was neither concealed nor the result of any voluntary action by Debtor. Furthermore, the Trustee admits in his pleadings that the transfer was involuntary and stipulates that Debtor is entitled to exempt a portion of the $18,983.22 as exempt property. Therefore, under section 522(g), Debtor can exempt a portion of the $18,983.22.

■ Debtor claims $5,200.00 of the $18,983.22 as exempt, and no timely objections were made to the claimed exemption. Therefore, the $5,200.00 is deemed exempt. 11 U.S.C.A. § 522(l) (West 1979); R.Bankr.P. 4003(b). The Trustee states that he may have a claim under 11 U.S.C.A. § 522(k) (West 1979)[16] for part of the $5,200.00 exemption as an administrative expense. The Trustee bases this claim on the costs and expenses of his recovering the money from the Ralston Purina Compa-

---

**14.** 11 U.S.C.A. § 544(a)(1) (West 1979) provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is avoidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

**15.** On August 18, 1983, the Court entered a consent judgment against the Ralston Purina Company. The consent judgment voided, as preferential, the transfer to the state court made in response to the garnishment.

**16.** 11 U.S.C.A. § 522(k)(2) (West 1979) provides:

Property that the debtor exempts under this section is not liable for payment of any administrative expense except—

. . . .

(2) any costs and expenses of avoiding a transfer under subsection (f) or (h) of this section, or of recovery of property under subsection (i)(l) of this section, that the debtor has not paid.

ny. The Court can rule on the Trustee's request if the Trustee properly requests the payment of an administrative expense.

 Debtor argues that he is entitled to the remainder of the $18,983.22 under 11 U.S.C.A. §§ 507(a)(3), 506(c), 503(b) (West 1979). Although it is not clear, Debtor apparently bases this contention on his assisting FmHA in the sale of the cows prior to the bankruptcy filing. Section 507(a)(3) does not establish a cause of action for the debtor, but only establishes that claims by creditors of the debtor for payment of wages are entitled to a priority of payment. Section 506(c) does not apply to the debtor, but to the trustee. Finally, section 503(b) provides that an entity which expends money after the commencement of the case for preserving the estate may be entitled to the payment of an administrative expense. In this adversary proceeding, Debtor's labor and expenses in assisting FmHA to sell the cows were prebankruptcy. These sections thus do not establish that Debtor is entitled to any of the balance of the $18,983.22.

An order in accordance with this opinion is attached hereto.