In re Irwin HYMAN and Janice Hyman, Debtors.

Irwin HYMAN and Janice Hyman, Appellants,

v.

Gary PLOTKIN, Chapter 7 Trustee, Appellee.

BAP No. CC–89–1651–MeVP.
Bankruptcy No. LA 88–24553.
Adv. No. 89–00544–GM.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 17, 1990.

Decided Feb. 12, 1991.

Richard M. Moneymaker, Los Angeles, Cal., for appellants.

Amy L. Goldman, Los Angeles, Cal., for appellee.

Before MEYERS, VOLINN· and PERRIS, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### I

Joint debtors under Chapter 7 of the Bankruptcy Code ("Code") brought this action against their estate trustee seeking a declaratory judgment that the debtors' principal residence was an exempt asset and no longer property of the estate. From an Order of the trial court granting summary judgment in favor of the Trustee, this appeal ensues. We AFFIRM.

### II

### FACTS

Irwin and Janice Hyman ("Hymans") filed a voluntary petition under Chapter 7 of the Code on November 21, 1988. They listed their principal residence as an asset, stating its value to be $415,000 and claiming a $45,000 homestead exemption. Gary Plotkin, the trustee ("Trustee"), did not object within 30 days either to the debtors' asset valuation or to the homestead claim. The Trustee later sought to sell the residence and presumably retain for the estate any proceeds from the sale above the sum of the encumbrances and the homestead exemption.

The Hymans initiated this adversary proceeding against the Trustee for a judgment declaring the residence to be an exempt asset no longer within the estate, or in the alternative, declaring that all postpetition appreciation accrues for the benefit of the debtors. The Trustee moved for summary judgment and that motion was granted following a hearing, with the judgment being entered July 12, 1989.

## III

## STANDARD OF REVIEW

■■■ The Panel reviews summary judgments *de novo*. *In re Two S Corp.*, 875 F.2d 240, 242 (9th Cir.1989); *In re Softalk Publishing Co.*, 856 F.2d 1328, 1330 (9th Cir.1988); *In re Orosco*, 93 B.R. 203, 207 (9th Cir.BAP 1988). A summary judgment may be affirmed only if it appears, after reviewing all evidence and factual inferences in the light most favorable to the opposing party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *In re Seaway Express Corp.*, 105 B.R. 28, 30 (9th Cir.BAP 1989), *aff'd* 912 F.2d 1125 (9th Cir.1990). California state law controls substantive questions involving homestead exemption rights. *See In re Peters*, 91 B.R. 401, 408 (W.D.Tex.1988); *In re Schneider*, 9 B.R. 488, 491–92 (N.D.Cal. 1981). *See also In re Anderson*, 824 F.2d 754, 756 (9th Cir.1987).

## IV

## DISCUSSION

The Hymans do not argue that any material fact is at issue. Rather, the Appellants make a series of legal arguments that build on one another to their urged conclusion that the Trustee may not now sell the Hyman residence because it is no longer part of the estate.

The Appellants argue that since the Trustee did not object within 30 days to the valuation of their residence stated on the original schedules filed, that value may not now be disputed. They further contend that the *physical dwelling itself* was a validly claimed exempt asset and since there was no surplus value in the asset at the time of the petition it reverted from the estate to the debtors. Hence the Appellants conclude that the property is no longer the Trustee's to sell or at least that any postpetition appreciation in value belongs to them. Four legal questions are thus raised by this appeal: first, whether the debtor is correct in assuming that no surplus value existed in the property; second, whether the $45,000 California homestead exemption refers to a physical asset or to a debtor's equity in such asset; third, whether an asset with both exempt and nonexempt equity reverts to a debtor or rather whether postpetition appreciation is part of the "proceeds" of estate property; and fourth, whether the Trustee is now estopped from challenging the stated value of the Hyman property.

### A. *Surplus Value May Exist in the Property*

■■ Without the benefit of a formal appraisal, the Appellants stated the value of their residence to be $415,000. They maintain that consequently, no surplus value exists for the estate because the sum of the encumbrances, homestead exemption and selling costs is $425,811.01. The debtors' position is predicated on the listed encumbrances of $278,107.20 and $69,503.81, being added to the $45,000 homestead exemption and selling costs of $33,200, calculated at eight percent of the $45,000 value attributed to the property. The selling costs must be added in, say the debtors, because only after payment of such costs would the estate realize any value from the sale. Further, the debtors assert, without statutory or case authority, that "in California, Trustees ... subtract eight (8%) percent for costs of sale."

If the selling costs are not added in, however, the equity available for the estate would be any amount exceeding $392,-611.01 (encumbrances totalling $347,611.01 plus the homestead exemption of $45,000). Even by the Appellants' own valuation of $415,000, therefore, equity would exist in the property. The Trustee would thus have the right to administer the property to assure payment to secured creditors and at sale the Trustee would retain any surplus for the estate above the $45,000 to be paid to the debtors.

The debtors' assertions about the eight percent selling costs are not supported by the California statute governing sale of a homestead. Section 704.800 of the Code of Civil Procedure (West 1989) provides in pertinent part:

(a) If no bid is received at a sale of a homestead pursuant to a court order for sale that exceeds the amount of the homestead exemption plus any additional amount necessary to satisfy all liens and encumbrances on the property, including but not limited to any attachment or judgment lien, the homestead shall not be sold and shall be released and is not thereafter subject to a court order for sale upon subsequent application by the same judgment creditor for a period of one year.

No mention is made of any requirement that the selling costs also be exceeded for a bid to be accepted; only the encumbrances and homestead exemption are counted. Based solely on the figures scheduled by the Appellants, which valued the residence at $415,000 with secured liens of $347,611 and a homestead exemption of $45,000, the conceded equity in excess of all secured claims and exemptions is approximately $22,389. The Trustee had a duty to attempt to "collect and reduce to money" this property of the estate and would be remiss if he failed to do so. *See* 11 U.S.C. § 704(1).

Further, this Panel is not bound by the assertions of customary practices of Trustees. It may well be that the property can be sold at far less administrative cost than $33,200. We are not persuaded that California law either requires the Trustee to withhold eight percent selling costs or that selling costs are included in the sum that must be exceeded under California Civil Procedure Code Section 704.800. Placing such a restriction on the Trustee in this case would in practical effect raise the debtors' exemption by an additional $33,-200, an effect not contemplated by the California homestead provisions. We focus on this aspect of the appeal in order to demonstrate that in the context of a grant of summary judgment, even accepting the facts on valuation in the light most favorable to the debtors, they would not be entitled to prevail. Of course, if summary judgment in favor of the Trustee was not appropriate and this was tried on the merits, the discussion regarding the use of costs of sale figures would undoubtedly lose its significance if the Trustee is able to prove that the valuation of the property is anywhere near the $650,000 his evidence suggested.

The debtors chose to proceed under the liquidation provisions of Chapter 7; as stated recently, "liquidation of the estate means sale of the real estate.... If [the debtors] wanted to hold on to their property they should have sought reorganization under Chapter 13." *Matter of Lindsey,* 823 F.2d 189, 191 (7th Cir.1987).

### B. *The California Homestead Exemption Refers to Equity Rather than a Physical Asset*

Appellants' suggestion that homestead protection attaches to physical property rather than to a debtor's economic interest in the property is undermined by the California Constitution, California homestead statutes and interpreting case law.

The concept that some interests are immune from the reach of creditors is enshrined in the California Constitution: "The Legislature shall protect, by law, from forced sale a certain *portion* of the homestead and other property of all heads of families." (emphasis added) Cal. Const. Art. XX, Section 1.5. The statutory scheme implementing this provision appears at Cal.Civ.Proc.Code §§ 704.710–.850 (West 1989) and is said to "[provide] protection for a portion of the *equity* in the debtor's home against creditors who seek satisfaction by forced sale of the home." (emphasis added). Note, *Exemptions Under the Bankruptcy Code: Using California's New Homestead Law as a Medium for Analysis,* 72 Calif.L.Rev. 922, 938 (1984). *See also* R. Aaron, *Bankruptcy Law Fundamentals* § 7.03 (1989).

The portion of the Hymans' homestead entitled to protection is $45,000. Cal.Civ. Proc.Code § 704.730. The California legislative ceiling on the value of an exemption contrasts with statutes like those of Minnesota and Texas which place acreage rather than value limitations on homestead exemptions. *See* Minn.Stat. § 510.02 (1990); Tex.

Prop.Code Ann. §§ 41.001–.002 (1989) (value limits in certain instances).

The "excess value" in a California homestead, the value above encumbrances and the exemption amount, has always been available to creditors. In *Payne v. Cummings*, 146 Cal. 426, 80 P. 620 (1905), for example, the court stated: "The homestead declared upon may embrace an area even greater in value than the five-thousand-dollar homestead exemption allowed.... In such a case the homestead is not void, but proceedings must be had ... for the appraisement and division or sale of the property." 146 Cal. at 429, 80 P. 620. *See also Kahn v. Berman*, 198 Cal.App.3d 1499, 244 Cal.Rptr. 575 (1988) (courts should assess excess value of property prior to ordering sale); Cal.Code Civ.Proc. §§ 704.740–.850 (containing procedures for executing on excess value above homestead exemption and encumbrances); H.R. No. 595, 95th Congress, 1st Sess. 360–61 (1977), U.S. Code & Cong. Admin.News 1978, pp. 5787, 6315–6317, (intention of Congress for the federal exemptions was that "property may be exempted even if it is subject to a lien, but only the unencumbered portion of the property is to be counted in computing the 'value' of the property for the purposes of exemption.")

The cases could not come to any other conclusion. It is not logically possible to reconcile the explicit limitation on exemption value with a notion that the property itself is exempt except by requiring the debtor to reimburse the estate for the excess value of a retained homestead dwelling. No California case suggests such a solution. Rather, by setting a maximum on what can be claimed the legislature recognized that the property may be subjected to a forced sale. The procedure for such forced sales is set forth in the exemption statutes at Cal.Code Civ.Proc. §§ 704.-740–.850.

Appellants' error is to confuse the policy of preserving family life and preventing homelessness with protection of a specific residence from creditors. This distinction is underscored by related statutory provisions. Where a forced sale has occurred, the proceeds of the exemption, in this case $45,000, may not be reached by creditors for a period of six months. Cal.Civ.Proc. Code §§ 704.720(b), 704.960. This permits the debtor time to settle into a substitute dwelling. *See Ortale v. Mulhern*, 58 Cal. App.3d 861, 864, 130 Cal.Rptr. 277 (1976); *Thorsby v. Babcock*, 36 Cal.2d 202, 205, 222 P.2d 863 (1950).

## C. *Postpetition Appreciation of Assets With Non–Exempt Equity Accrues to the Benefit of the Estate*

■ Postpetition appreciation accrues to the benefit of the estate. Section 541(a)(1) of the Code provides that a debtor's estate is comprised of all legal or equitable interests owned by the debtor as of the commencement of the case. When such assets become productive after the filing, the estate is supplemented by all "proceeds, product, offspring, rents, and or profits of or from property of the estate ..." Section 541(a)(6). Hence, where an asset of the estate is sold by the trustee the estate is entitled to the proceeds of that sale. *In re Calder*, 94 B.R. 200, 201 (Utah 1988), *aff'd* 912 F.2d 454 (10th Cir.1990); *In re Paolella*, 85 B.R. 974, 977 (E.D.Pa.1988). According to the legislative history of this section, "proceeds" is not to be defined as narrowly as in the Uniform Commercial Code. S.Rep. No. 989, 95th Cong.2d Sess. 82, (1978); H.R.Rep. No. 595, 95th Cong. 1st Sess. 368 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5868, 6323. The result is a meaning that is "exceedingly broad." *Calder, supra*, 94 B.R. at 201.

■ Some cases evidence a tension between Section 541(a)(6) and the provisions of Section 522(f)(1) which prohibits a judicial lien from impairing an exemption to which the debtor otherwise would be entitled. Where a discharge has occurred, for example, and a judicial lienor seeks execution on exempted property courts have held that the exempt asset is valued as of the filing of the petition and any appreciation may be retained by the debtor. Such a holding has the effect of protecting an appreciating asset against foreclosure and

thereby enhancing the "fresh start" policy of bankruptcy law. *See e.g., In re Dvoroznak,* 38 B.R. 178, 182 (E.D.N.Y.1984); *In re Rappaport,* 19 B.R. 971 (E.D.Pa.1982); *In re Walters,* 14 B.R. 92 (S.D.W.Va.1981), *aff'd sub. nom BancOhio Nat. Bank v. Walters,* 724 F.2d 1081 (4th Cir.1984). *See also In re Galvan,* 110 B.R. 446 (9th Cir.BAP 1990) (avoidance of both secured and unsecured portion of judicial lien); *In re Herman,* 120 B.R. 127 (9th Cir.BAP 1990). Any such fresh start policy is much reduced in importance, however, where the bankruptcy is still being actively administered. Moreover, in California the debtor has the protection described above of the six months "proceeds exemption" of Cal. Civ.Proc.Code §§ 704.720(b) and 704.960. Finally, the "reversion" argument raised by the Appellant cannot be accepted under a statute like California's which requires an appraisal to be made of the equity. At first glance the contention has much appeal. Section 522(*l*) states unequivocally that "unless a party in interest objects, the property claimed as exempt on such list is exempt." It is also undoubtedly true that exempted property must ultimately "revest" in the debtor; but this is inherent in a statutory structure that vests "all legal or equitable interests of the debtor in property" in the estate at the commencement of the case. Code Section 541(a)(1). Hence several cases state that property claimed as exempt revests in the debtor upon the failure of any party to object within a specified period. *See e.g., In re Kretzer,* 48 B.R. 585, 587 (Nev.1985); *Matter of Wiesner,* 39 B.R. 963 (W.D.Wis.1984); *In re Berry,* 11 B.R. 886, 890 (W.D.Pa.1981).

These cases, however, should be interpreted as simply accurately describing two rules in one sentence. In other words, the 30–day period fixes the right to an exemption and the statute as a whole requires that the property somehow revest. The *timing* of the reversion, however, is not apparent by the interplay of these two rules; it is not necessarily prior to abandonment by the trustee or immediately following the 30–day period.

■ The dissent appears to be concerned that trustees will hold property, which does not have any realizable equity on the date the petition is filed, hoping to gain advantage of post-petition appreciation. This concern is certainly unwarranted in this case where the Appellants' own figures reveal a not inconsiderable equity which might be gained for the estate. Also, a trustee has an affirmative duty to collect and reduce to money the property of the estate and to close the estate as expeditiously as is compatible with the best interest of parties in interest. *See* 11 U.S.C. § 704(1); *In re Riverside–Linden Inv. Co.,* 85 B.R. 107, 111 (S.D.Cal.1988), *aff'd* 99 B.R. 439 (9th Cir.BAP 1989); *In re Afco Dev. Corp.,* 65 B.R. 781, 787 (Utah 1986). Therefore, a trustee is not in a position to unnecessarily delay the liquidation of estate property.

■ Further, if a debtor does become concerned that a trustee may act in dereliction of duty and not liquidate particular property within a reasonable time, the debtor may force the issue by requesting that the trustee abandon the property pursuant to 11 U.S.C. § 554(b). *See* B.R. 6007(b). In *In re Pauline,* 119 B.R. 727 (9th Cir.BAP 1990), the Panel recently upheld a trial court order requiring a Chapter 7 trustee to market the homesteaded realty within a defined period of time or it would be deemed abandoned. In that case, as in the instant case, the trustee never filed an objection to the homestead exemption claim. When the debtor in *Pauline* became concerned over the apparently inconsistent postures of the trustee as to further administration of the homesteaded property, he petitioned the trial court and received an order providing a deadline for the trustee to market the property. 119 B.R. at 727–28. If the trustee does not expeditiously market the property, the debtors can always file a motion to force a sale or abandonment. At the time the trustee presents a sale for approval, the trial court can then consider if the benefits for the estate are *de minimis* and should be balanced against the disadvantage to be suffered by the debtors having to vacate their residence.

In the context of a motion seeking abandonment, evidence that no potential sale within a reasonable period of time could provide any benefit for the estate, after paying costs of sale, the payoff of encumbrances and satisfaction of the allowed homestead exemption, will no doubt determine the final outcome.

### D. *The Trustee May Challenge the Value of the Property*

The Hymans apparently never sought the closing of their bankruptcy or moved to have the Trustee abandon the property. Also, the debtors do not dispute the representations of the Trustee that he acted "expeditiously" after the Section 341(a) hearing to obtain an appraisal of the property. Nonetheless, the Hymans claim that the failure of the Trustee to object to the property valuation within 30 days of the filing estops the Trustee either from retaining administrative control over the residence or from seeking to take advantage of any post-filing appreciation. The Appellants' argument fails for both legal and logical reasons.

The legal grounds are two-fold: first, that the entire value of the residence initially came into the debtor's estate and was not "impliedly abandoned" by the Trustee; and second, that objections to the *existence* of an exemption differ from objections to the *valuation* of property subject to an exemption claim limited in dollar amount.

Under Section 541(a) of the Code, all legal and equitable interests of the debtor belong to the estate at the commencement of the case. Thereafter, the debtor may remove some of the property by claiming exemptions under Section 522(b). *In re Woodson*, 839 F.2d 610, 616 n. 8 (9th Cir. 1988); *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 708–09 (9th Cir.1986). Title is therefore in the trustee· from the beginning and "[u]nless property is abandoned or intentionally revested, title generally remains in the trustee. Abandonment requires affirmative action or some other evidence of intent by the trustee." *In re Berg*, 45 B.R. 899, 903 (9th Cir.BAP 1984). During the pendency of

the case, the notice and hearing requirements of Section 554 must be observed for an "abandonment" to occur. *Sierra Switchboard, supra* 789 F.2d at 709 ("... there is no abandonment without notice to creditors").

The second ground preventing an estoppel of the Trustee in the instant case is the distinction between an objection to the existence of an exemption and an objection to the valuation of the property in which debtors claim an exemption. Only the former objection must be made within the Bankruptcy Rule 4003(b) 30–day period following the meeting of creditors. *In re Allen*, 44 B.R. 38 (N.M.1984). The two types of objections serve competing interests: one gives a debtor a prompt determination of his right to exemptions and the other allows creditors to obtain a fair valuation of the property. *Allen, supra*, 44 B.R. at 40. Although objections to the exemptions themselves should be made as quickly as possible, the "[o]bjections to valuation, on the other hand, need not be completed with such expediency, nor should the creditor be required to rush out and value the debtor's property in order to protect his interests in that property." *Allen, supra*, 44 B.R. at 40. *See In re Pauline, supra*, 119 B.R. 727. *But see In re Tarrant*, 19 B.R. 360, 366 (Alaska 1982); 3 *Collier on Bankruptcy* ¶ 506.04[2] (15th ed. 1990).

Logic also defeats any argument founded on a claim of estoppel or equitable considerations. There was no reason for the Trustee to object to the valid claim of a homestead exemption by the Appellants. Hence the Trustee's failure to speak was not a misleading communication on which the Hymans were entitled to rely and therefore the Trustee is not estopped. This conclusion is supported by the case of *In re Golden*, 789 F.2d 698 (9th Cir.1986). Golden sold his residence and thereafter filed for bankruptcy, claiming a homestead exemption in the proceeds of the house sale. Under the California six-month reinvestment statute the debtor could validly claim such a homestead exemption if the proceeds were used to purchase a substitute

dwelling. Cal.Civ.Proc.Code §§ 704.720(b), 704.960. Since the last day for filing objections to the debtor's homestead claim fell within the six-month reinvestment period, the trustee did not object to the debtor's homestead claim.

When the debtor did not reinvest the money from his house sale, the trustee argued that the proceeds had lost their exempt status and therefore should be returned to the estate. Golden responded that the trustee was estopped for failing to object to the homestead claim within the six-month period. In ruling for the trustee, the court stated:

> Because the exemption remained in effect during the six-month period, and the trustee had no right to claim the proceeds during that period, we see no reason for requiring that he notify the debtor of a claim not yet in existence. Given the clarity of provisions requiring reinvestment, Golden could not have reasonably relied upon the trustee's silence as an indication of a permanent exemption.

789 F.2d at 701.

The dissent suggests that the grant of summary judgment "in effect" allows the trustee to object to the exemption claim in an untimely manner. This misconstrues the ruling on appeal. The debtors filed a complaint to have their "home" declared exempt based on the failure of the trustee to file any objection to their exemption claim. Their goal "in effect" is not only to have judicial recognition of their exemption, but also to force the trustee to abandon the entire property even though he would like to administer the asset in order to realize equity for the benefit of the estate. The dissent would have us rule that abandonment is mandated by a failure of the trustee to timely object to an exemption claim he has no cause to challenge. By simply agreeing to a valid claim of exemption, an estate is not forced to abandon a valuable asset.

This, then, is the crux of our decision. We reject the debtors' attempt to use the concession made by the trustee in regard to their claim of a homestead exemption, to then force the trustee to abandon valuable estate property. There may be time limits on filing objections to exemption claims under Bankruptcy Rule 4003(b), but abandonments are governed by Section 554 of the Code and Bankruptcy Rule 6007, which contain no specific time restraints on the trustee's ability to fully administer estate property. The burden is on the party seeking to force an abandonment of specific property to take the initiative. Here the debtors have brought an action which is actually directed toward an early abandonment of their residence and have failed to demonstrate that the facts would justify such an order.

## V

### CONCLUSION

The Appellants' arguments fall before the central fact that in California the Hymans' homestead exemption is limited to $45,000. Their entitlement to this exemption is not disputed. Even on the debtors' own valuation surplus value exists in the property if selling costs are disregarded. The Trustee should be allowed to make appropriate arrangements for sale within a reasonable period of time; any resulting proceeds that exceed the encumbrances plus $45,000 belong to the estate.

AFFIRMED.

VOLINN, Bankruptcy Judge, dissenting:

### FACTS

The debtors filed their bankruptcy petition on November 21, 1988. They listed their home as an asset and claimed a homestead exemption in it. The home was stated to be valued at $415,000. They also calculated the selling costs of the home at eight percent of $415,000 or $33,200. The debtors listed encumbrances against the property of $278,107 and $69,503 for a total of $347,610. The foregoing total added to the debtors' homestead exemption of $45,000 comes to $425,810 which exceeds the stated value of the property, therefore, in the debtors' view leaving no equity for creditors in the event of forced sale. How-

ever, if the selling costs of $33,200 (eight percent of $415,000) were not added to the foregoing total of encumbrances plus the exemption, then there would be an equity, presumably, of $22,390 available to creditors ($415,000 minus $392,610).

The bankruptcy, as indicated, was filed on November 21, 1988. On that date, the debtors' homestead exemption schedule and claim were filed pursuant to 11 U.S.C. § 522(*l*)[1] which provides as follows:

(*l*) The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed on such list is exempt.

The date set for the first meeting of creditors pursuant to Sec. 341(a) was December 27, 1988. The court in its Order For Meeting Of Creditors Combined With Notice Thereof And Of Automatic Stay, fixed certain time limits as to various events including a time limit for objection to exemptions. The order stated:

Unless the court extends the time, any objection to the debtors' claim of exempt property (Schedule B–4) must be filed by THE TIME FIXED PURSUANT TO BANKRUPTCY RULE 4003(B) (sic).

Rule 4003(b) provides:

(b) **Objections to Claim of Exemptions.** The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting held pursuant to Rule 2003(a) or the filing of any amendment to the list unless, within such period, further time is granted by the court. Copies of the objections shall be delivered or mailed to the trustee and to the person filing the list and the attorney for such person.

Based on the foregoing, the trustee had until 30 days after December 27, 1988 within which to file an objection to the debtors' claim of exempt property. That date would have been January 26, 1989. No such objection was filed by the trustee or any party in interest.

On March 24, 1989, the debtors filed a complaint for declaratory relief seeking to have their home declared as exempt. The trustee moved for summary judgment. The trustee alleged *inter alia*, that an order of the court authorizing him to employ a broker was entered on January 30, 1989; an affidavit from the real estate broker, Judith Barbour, stated the homestead property to be worth between $610,000 and $650,000, a market analysis being attached to the affidavit. The debtors responded, attaching a declaration by, Gary Bluman, an appraiser, valuing the property at between $405,000 and $440,000, concluding that $419,000 was a conservative estimate of value.[2] Thus, there was a substantial dispute as to value. The court nevertheless granted the trustee's motion for summary judgment holding, in effect, that the trustee was not precluded from objecting to the exemption claim after the time fixed by Rule 4003(b); that the debtors could not add expenses of sale to the encumbrances, and that the trustee was entitled to post-bankruptcy accretion in value to the home.

## ISSUES

There are various issues which have been precipitated by virtue of the debtors' declaratory judgment action and the trustee's response thereto. These may be summarized as follows:

1. Whether the trustee is precluded from challenging the debtors' homestead ex-

---

1. Section and chapter references herein refer to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. Bankruptcy Rule 4003(c) provides:

(c) **Burden of Proof.** In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections.

The trial court appears to have accepted the debtors' valuation. Appellee does not contest this valuation in his briefs. The $4,000 difference between the debtors' valuation and that of their appraiser is not large enough to affect appellants' position.

emption claim where neither he nor any party in interest failed to object in any way (as to the existence of exemption or the amount thereof) within the 30–day period established by Rule 4003(b).

2. In considering an exemption claim and whether the trustee is precluded from offering the property for sale by virtue of there being no equity in the estate, shall the costs commonly attributable to sale of real estate be added to the sum exempt by law.

3. Whether under the federal bankruptcy exemption statute or under California law, or both, the trustee is precluded from claiming postpetition appreciation in value of the property in which an exemption is claimed. To put it otherwise, are the rights of the estate, insofar as value is concerned, fixed as of the date of the filing of the bankruptcy petition.

## DISCUSSION

**A.** The statutory homestead exemption is intended to allow an exemption claimant to retain possession of his home where no equity exists above the exemption amount.

Turning to the language of Cal.Code of Civil Procedure § 704.800,[3] it is clear that whatever the nature of the debtor's interest may be, given no value in excess of liens against the property plus statutory exemption, the property is exclusively that of the debtor's beyond all reach by his creditors so long as that condition obtains. To consider the nature of the debtor's interest in the property in this context is a gratuitous exercise.

The effect of a valid homestead exemption claim is the central issue of this appeal. The majority concludes that while the debtor derives his statutory homestead from the legislative policy of preserving

"family life and preventing homelessness" this is not to be confused "with protection of a specific residence from creditors." The majority would hold that the debtor's exemption *only* entitles him to the money equivalent of his equity position at the time of filing, up to the maximum exemption amount; and that there is no protected interest in continued residence within specific property. Not only is this theory at odds with the language and spirit of the exemption statute, it is in conflict with a previous holding of this Panel. In *Weiman v. Stopher (In re Weiman)*, 22 B.R. 49 (9th Cir.BAP 1982), the Panel held that § 544 does not endow the trustee with the continuing lien of a judgment creditor on the debtor's property. In *Weiman*, the trial court had previously ruled that while the debtors' home was exempt from property of the estate, it was nevertheless subject to a continuing lien under California law in favor of the trustee in the amount of the allowed unsecured claims in the estate. The trustee would have thus been able to execute on the lien at some later date, post-bankruptcy, in order to satisfy these claims. The Panel reversed, concluding that § 544 granted the trustee only the rights of one holding a judgment lien as of a particular point in time, the commencement date of the case, which rights did not include a continuing lien on the debtor's exempt property. The concurring opinion stated:

> There is an inherent contradiction in allowing discharged creditors, by virtue of invoking § 544, to have access to the debtor's ... homestead itself should the debtor, years later, desire to leave it. The stay provisions of § 362, and the character of discharge as an injunction, [§ 524(a)], in order to serve [as] a fresh start, would be subverted. The debtor, instead of having a fresh start, would have a homestead subject to doubt and uncertainty during the lifetime of the

---

**3.** Section 704.800 of the Code of Civil Procedure provides:

(a) If no bid is received at a sale of a homestead pursuant to a court order for sale that exceeds the amount of the homestead exemption plus any additional amount necessary to satisfy all liens and encumbrances on the property includ-

ing but not limited to any attachment of judgment lien, the homestead shall not be sold and shall be released and is not subject to a court order for sale upon subsequent application by the same judgment creditor for a period of one year.

[state lien]. Moreover, such a result would violate the spirit, if not the letter, of [§ 522(c)] which provides that property exempted under § 522 is not liable during or after the case for pre-bankruptcy debts.

*Id.* at 53.

Here, the trustee would use his ministerial claim of title in the same manner as the trustee attempted to use the lien claim of a judgment creditor under § 544. He should likewise not be permitted to do so.

**B.** The trustee may not sell the debtors' residence unless its fair market value exceeds the amount necessary to pay the debtors their statutory exemption amount.

The relevant state statute, Cal.Civ.Proc. § 704.800, provides that the trustee may not sell the debtors' homestead if he cannot obtain a sufficient price to satisfy all liens and pay the debtors their exemption. What the statute does not establish is *when* it must be determined whether sufficient value in the property exists to permit the sale. This state statute, one which applies to all forms of execution against the debtors' property, must therefore be harmonized with the Code.

Because of the nature of the homestead, under state law and the Bankruptcy Code, operative facts are based on abstractions, that is, opinions as to value. . Real value based on market price does not enter into the equation. Further, market price and consequently, opinion as to value fluctuate over periods of time. It is therefore necessary to examine whether there is either a period or point in time when value must be considered.

Valuing property claimed exempt as of the petition date is consistent with § 522(a)(2), which states that " 'value' means fair market value as of the date of the filing of the petition...." Likewise, § 541(a)(1) states that the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." These two Code sections indicate the intent of Congress to establish a point in time at which the rights of the parties in the debtors' property shall be established. In the case of *In re Tarrant*, 19 B.R. 360 (Bankr.D.Alaska, 1982), the court in holding that the debtor was entitled to postpetition appreciation of the homestead stated:

> The language of the code, particularly the definition of "value" contained in § 522(a)(2), and the history of the judicial interpretation, concerning the "date of cleavage" demonstrates that for purposes of determining exemptions Congress intended that valuation be made as of the date of filing of the petition. Such a rule *assures consistency among the various Code Sections,* provides for certainty for purposes of administration of the estate, and protects a debtor's fresh start by fixing property rights as of the date of filing.

*Id.* at 366 (emphasis added). *Tarrant* has been cited as authority by: *In re Dvoroznak*, 38 B.R. 178 (Bankr.E.D.N.Y.1984); *In re Duncan,* 43 B.R. 833 (Bankr.D.Alaska 1984); *In re Salamone,* 46 B.R. 19 (Bankr. E.D.N.Y.1984); *In re Sajkowski,* 49 B.R. 37 (Bankr.D.R.I.1985) and *In re Grosso,* 51 B.R. 266 (Bankr.D.N.Mex.1984).

The majority nevertheless relies on § 541(a)(6) as standing for the proposition that the estate may benefit from post-petition appreciation of the debtors' property. Section 541(a)(6) provides in part that the bankruptcy estate includes "[p]roceeds, product, offspring, rents, and or profits of or from property of the estate...." This argument begs the question since it assumes that the exempted property remains in the estate subject to the trustee's right to sell the property in order to gain appreciation. Such an interpretation can render Rule 4003(b) meaningless because it disengages the trustee from the Rule's time constraints in dealing with the debtor's exempt property. The trustee does not have such unbridled discretion. His property interest and that of the debtor are fixed as of the date of bankruptcy. *White v. Stump,* 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924); *In re Whitman,* 106 B.R. 654 (Bankr.S.D.Cal.1989). If no realizable equity exists in the homestead on the date the

petition is filed, subsequent appreciation is irrelevant.

**C.** The trustee is estopped to challenge the debtors' valuation of their homestead because he failed to object to such valuation within the period established by Rule 4003(b).

It should be remembered that the trustee under the Code has no interest in exempt property other than to perform the ministerial act of recognizing the debtor's paramount interest therein. Bankruptcy Rule 4003(b) implicitly recognizes that there may be a proclivity for inaction resulting in passive or calculated delay and has provided that acknowledgment of the exemption be accomplished by deadline. If the trustee does not take action within thirty days, the debtor's exclusive interest in the property to the full extent of the exemption claim is established. This is not to say that the trustee may not contest the validity of the claim or ask for and receive additional time to do so if warranted; or even at a later date, assuming he discovers evidence of it, claim that the debtor's claim to the exemption was based on fraud. In this case no objection was made. No extension was requested and therefore, none was authorized; nor is there any claim of fraud.

The debtors stated that the value of their homestead on the date of the petition was $415,000. The trustee did not object to this valuation within the 30–day period established by Rule 4003(b). Under § 522(*l*), a debtor must make a list of property claimed as exempt under either federal or state exemption law. Rule 4003(b) provides that the trustee or any creditor has 30 days after the first creditors' meeting is held (or after the debtor amends his list) to file objections to the debtor's claimed exemptions. The rule further provides that the trustee/creditor may request an extension of this 30–day period, which the court in its discretion may grant, but only if such a request is granted within the original 30–day period. The court has no discretion to enlarge the 30–day objection deadline

once it has expired. Rule 9006(b)(3).[4] Thereafter the debtor's right to its exemption cannot be collaterally attacked, unless the debtor's claim of exemption was in bad faith and the exemption would not otherwise have been granted as a matter of law.

There is a substantial line of cases which hold that where neither the trustee nor a creditor objects to the debtor's claimed exemption within the time established by Rule 4003(b), and that property is intrinsically exempt, the right to object is thereby deemed waived, and the property claimed as exempt is exempted from the bankruptcy estate. *See, e.g., Munoz v. Dembs (In re Dembs)*, 757 F.2d 777 (6th Cir.1985); *In re Keyworth*, 47 B.R. 966 (D.C.Colo. 1985); *In re Caruthers*, 87 B.R. 723 (Bankr.N.D.Ga.1988); *In re Latimer*, 82 B.R. 354 (Bankr.E.D.Pa.1988); *In re Lattimore*, 81 B.R. 18 (Bankr.E.D.Mo.1988); *In re Grossman*, 80 B.R. 311 (Bankr.E.D.Pa. 1987); *In re Hawn*, 69 B.R. 567 (Bankr.E. D.Tenn.1987); *In re Woerner*, 66 B.R. 964 (Bankr.E.D.Pa.1986); *In re Hahn*, 60 B.R. 69 (Bankr.D.Minn.1986); *In re Richards*, 57 B.R. 662 (Bankr.D.Nev.1986); *In re Thomas*, 43 B.R. 201 (Bankr.M.D.Ga.1984); *In re Gullickson*, 39 B.R. 922 (Bankr.W.D. Wis.1984); *In re Blum*, 39 B.R. 897 (Bankr.S.D.Fla.1984).

COLLIER'S is also in accord with the holdings of the above cases:

> Once the deadline for objections to exemptions has passed, no objection may be filed unless the claim of exemptions is later amended. Under Code section 522(*l*), if no party in interest has objected to the exemptions claimed, the property claimed as exempt on the debtor's list is exempt.

8 King, COLLIER ON BANKRUPTCY, ¶ 4003.04[3] at 4003–11 (15th ed. 1987).

In this case, it appears that the trustee did not file an objection to the debtors' claimed exemption within the 30–day period under Rule 4003(b). There is no indication that the debtors amended their list of exemptions, which under Rule 4003(b) would have automatically extended the deadline

---

**4.** *In re Rhodes*, 61 B.R. 626 (9th Cir.BAP 1986), and *In re Hill*, 811 F.2d 484 (9th Cir.1987),

which dealt with the time limiting objection to discharge.

for filing objections. Under these facts, and the line of cases noted above strictly construing Rule 4003(b), it would appear that the trustee's failure to timely object constituted a waiver of his right to object, such that the debtors' estimation of the value of their homestead cannot now be collaterally attacked.

A recent example of the strict construction given Rule 4003(b) is found in *Brayshaw v. Clark (In re Brayshaw)*, 912 F.2d 1255 (10th Cir.1990). There the trustee filed a motion 30 days after the first creditors' meeting was held, seeking a 60–day extension of time to file objections to the debtor's exemptions. The bankruptcy court set the trustee's motion for hearing after the expiration of the additional 60–day period requested. The trustee filed his objections within the 60–day period, and the bankruptcy court later granted the trustee's motion *nunc pro tunc.*

The district court reversed, and that reversal was affirmed by the Tenth Circuit. The Tenth Circuit held:

> The Rules are quite clear on their face, we believe, that a bankruptcy court can extend the period for objections to exemptions only by acting within the original time period.... *There is simply no room* in the wording for construing Rule 4003(b) or Rule 9006(b) *to permit granting an extension of time to file objections outside the original thirty-day time limit.*

*Id.* at 1257 (emphasis added).

Many cases have limited this broad rule, and have held that the debtor's exemptions claim must be in good faith to be upheld, notwithstanding the absence of a timely objection. *See e.g., Dembs,* 757 F.2d at 780. In other words, property that would otherwise not be exempt as a matter of law does not become exempt simply because no one timely objects to the claimed objection.[5] On the facts provided by the record, there does not appear to be an issue as to the underlying validity of the claimed exemp-

tion. Under these circumstances, there is no need to address this exception to the generally strict interpretation of Rule 4003(b).

The majority relies on a distinction between objection to the *existence* of a claimed exemption and objection to the *valuation* of the property claimed exempt, for purposes of the objection deadline. *In re Allen,* 44 B.R. 38 (Bankr.D.N.M.1984). The *Allen* court held that while an objection to the existence of the exemption itself must be made within the 30–day period, a valuation objection need not be. *Allen,* 44 B.R. at 39–40. The court reasoned that the two objections serve two different purposes, and that a party should not be expected to obtain an appraisal of the debtor's property in such a short period of time. To follow such reasoning would weaken if not vitiate Rule 4003(b), by injecting into it a distinction among types of objections which the Rule itself does not make or imply. A party would need only couch an objection to the debtor's claim of exemption in terms of a *valuation* in order to circumvent the Rule's objection deadline. This is particularly so where value is integral to the exemption claim as in the case before us.

Second, the *Allen* court relied to a large extent on *Fitzgerald v. Davis (In re Fitzgerald),* 729 F.2d 306 (4th Cir.1984), which was inapposite. *Fitzgerald* does not address Rule 4003(b). In that case, the debtors sought to avoid the plaintiffs' judgment liens against their homestead under § 522(f) by alleging that the liens impaired their homestead exemption. The trial court partially voided the liens and both parties appealed. While the appeal was pending, the debtors sold their home for "considerably in excess" of the value they estimated in their complaint. *Id.* at 308. There was no evidence that the property had appreciated between the date of the petition and the date of the sale. The *Fitzgerald* court held that, "in the absence of proof that the property has changed in

---

5. The *Dembs* court stated that this is to avoid instances of "exemption by declaration."

*Dembs,* 757 F.2d at 780.

value after the date of the filing ..." the court could consider the sale price in its determination of whether the plaintiffs' liens were avoidable under § 522(f). *Id.* at 308.

The *Fitzgerald* opinion provides little support for the proposition that the *Allen* case, and the majority, assert. *Fitzgerald* does not in any way address Rule 4003(b). It merely holds that "a [post-petition] sale price greatly in excess of an estimate is more reliable evidence of the 'value' defined in 522(a)(2)." *Id.* at 308. The *Fitzgerald* case in fact stands for a proposition contrary to that asserted by the majority. The *Fitzgerald* court permitted the consideration of the post-petition sale price of the debtors' homestead *because there was no evidence that the property had increased in value since the petition date.* In other words, if it was shown that the property had appreciated post-petition, the subsequent sale price would be irrelevant, because it was only admissible as a challenge to the debtors' *original* estimation; i.e., as a challenge to the value of the property on the date the debtors filed their petition.

In this case, the majority excuses the trustee's failure to timely object to the debtors' valuation of their residence by distinguishing between valuation objections and other sorts of objections. The principal case on which the majority relies for this distinction does not stand for the proposition it asserts. There is nothing in the Rule which indicates that courts should, or even are permitted to, make such a distinction among objections. On the contrary, Rule 9006(b)(3) and the relevant case law expressly provide that Rule 4003(b) time limits are to be strictly construed. Permitting a valuation objection to be made outside of the requirements of Rule 4003(b) is contrary to the trustee's statutory duty to act expeditiously in administering the property of the estate. § 704(1). To read an exception into Rule 4003(b) such as does the majority injects an uncertainty into the debtors' economic life and administration of the estate which the Rules were intended to prevent.

**D.** The expected costs of selling the debtors' residence must be taken into account when computing whether there exists any realizable equity in the homestead on the date of the petition.

The majority concludes with regard to this issue that the costs of selling the debtors' property need not be considered in determining whether "surplus value" in the property exists. The majority's discussion appears to take the following line: Cal.Civ. Proc. § 704.800, the applicable state exemption statute, does not expressly provide that selling costs must be added to the sum of the exemption amount and encumbrances when determining whether sale of the debtors' property is permissible under the state statute. Further, the Panel need not consider the "customary practices" of trustees (which may or may not provide for inclusion of selling costs). Moreover, if the debtors had wanted to keep their home they could have elected to file their petition under Chapter 13 (presuming they could have qualified thereunder). Finally, because the exemption applies to the debtors' equity, and not to the physical property itself, selling costs cannot be added to effectively raise the debtors' exempted interest: the statutory exemption amount represents the maximum amount the State permits a debtor to claim from his homestead as exempt.

The majority places great reliance on the absence of any provision in the relevant California statute whereby selling costs would be considered. However, the absence of such a provision under state law should not be dispositive of the issue of whether selling costs should be recognized as a relevant consideration in the context of a bankruptcy.

This Panel has previously recognized, albeit in dicta, that the cost of selling a debtor's homestead is relevant to the determination of the amount of realizable equity. In *In re Martin,* 20 B.R. 235 (9th Cir.BAP 1982), the subject property was worth $75,000, and had encumbrances totaling $43,200; there was thus an "apparent equity" of $31,800. The debtor had an allowable exemption of $30,000, which

seemed to leave an excess of $1,800. However, the Panel stated that, "[c]onsidering expenses of sale, there would presumably be no equity above the homestead." *Martin*, 20 B.R. at 236. The *Martin* case does not further address the issue of selling costs.

At least facially, the majority's disposition of the issue of selling costs ignores the practical matters of administering the bankruptcy sale of the debtors' home. The majority contends that consideration of selling costs would effectively increase the debtors' exemption. In the context of a forced sale, the debtor should not be required to suffer his home being sold out from under him when the result will be that he receives money amounting to his exemption or little more than that.

The trustee would incur costs in selling the property; whether eight percent is accurate, as the debtors argue, is subject to some question although common experience indicates that it is probable. But the actual amount of selling expenses is less important here than the fact that the trustee will certainly incur *some* level of expense in the sale. One can take judicial notice of various costs usually (if not necessarily) attending the sale of real estate in a bankruptcy. The major item is a real estate commission. It should be noted that the trustee has already retained a broker. There are also escrow fees, title insurance, appraisals, and tax or transfer charges. These expenses will certainly diminish the amount available to be distributed. Effectively, by withholding consideration of these expenses from the computation of realizable equity, the debtor in many cases would be financing the cost of the compulsory sale of his home. The court should not compel the debtor to bear these expenses, particularly when the exemption statutes allow the debtor to remain in his home, unless the creditors can have access to a distribution of surplus equity.

An example may serve to illustrate the point. Suppose it were undisputed that the fair market value of the debtors' home was $400,000, a value which exceeded the total of the home's encumbrances and the $45,-000 exemption by $1,000. Under the majority's conclusion, sufficient "surplus value" in the property would exist—here, $1,000—to permit the sale of the debtors' home. If it were also undisputed that the selling expenses would total no less than 5% of the value of the home, or $20,000, then, by the time selling costs and encumbrances were satisfied, there would be only $26,000 remaining to distribute on account of the exemption, considerably less than the $45,000 to which they are entitled under the exemption statute. The debtors would thus have financed the involuntary sale of their home, while unsecured creditors would have received nothing.

Assuming there were proof as to post-petition appreciation, the date of cleavage as to value was the date of bankruptcy. The debtor having the entire interest in the property as of that date, and the trustee having none, the appreciation should be that of the debtor. This would be consistent with the policy of the Code designed to give the debtor a fresh start after the petition date. *See In re Galvan*, 110 B.R. 446, 451 (9th Cir.BAP 1990), which in the course of invalidating a judicial lien on exempt property stated: "This concept of a fresh start includes reaping the fruits of post-petition appreciation of the debtor's real estate."

The time frames set by relevant provisions of the Bankruptcy Code and Rules do not preclude bankruptcy estates from having a fair opportunity to review false or overreaching exemption claims. The majority ruling attenuates specific standards relating to time and would undercut the fundamental policy of preservation of the debtors' homestead and fresh start when the bankruptcy petition is filed.