In Re Richard Harry JACKSON and Lisa Marie Jackson, Debtors.

Bankruptcy No. 94–04826–PCT–CGC.

United States Bankruptcy Court,
D. Arizona.

Oct. 5, 1995.

Daniel F. Furlong, Prescott, Arizona, for Debtors.

Daniel P. Collins, Rawlins Burrus Lewkowitz & Feinstein, P.C., Phoenix, Arizona, for Chapter 7 Trustee, Steven Singer.

Steven Singer, Prescott, Arizona, Chapter 7 Trustee.

## MEMORANDUM DECISION

SARAH SHARER CURLEY, Bankruptcy Judge.

### Preliminary Statement

The Debtors, RICHARD HARRY JACKSON and LISA MARIE JACKSON, and the Trustee, STEVEN SINGER, have requested that this Court determine whether an objection to an exemption must be filed when the Debtor's market value of the property claimed exempt is equal to the amount properly claimed as exempt by the Debtors under applicable state or federal law. The parties have fully briefed the matter.[1] Oral argument was conducted on this matter in Prescott, Arizona. Thereafter, this Court took the matter under advisement.[2]

This constitutes this Court's findings of fact and conclusions of law pursuant to Rule 7052, *Rules of Bankruptcy Procedure* (hereinafter "RBP"). This is a "core" proceeding, and this Court has jurisdiction over this matter. 28 U.S.C. §§ 1334 and 157. The Court has completed additional research on the issue presented and must now rule in favor of the Trustee.

### Factual Discussion

On May 24, 1994, the Debtors filed their voluntary petition under Chapter 7 of the Bankruptcy Code.[3] The Debtors simultaneously filed therewith their Schedules and Statement of Affairs. On Schedule B—Personal Property, the Debtors listed a "1986 Small Ford Bronco over 74,000 miles," noted that the vehicle was jointly owned, and listed a market value of $3,000.[4] On Schedule C—Property Claimed Exempt, the Debtors stated the following:[5]

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
| --- | --- | --- | --- |
| 1986 Small Ford Bronco over 74,-000 miles | Ariz.Rev.Stat. § 33–1125 | $3,000 | $3,000 |

1. The Trustee filed an objection to Property Claimed Exempt. Subsequently, the following pleadings were filed: Debtor's Response to Trustee's Objection; Trustee's Reply; Debtor's Supplemental Memorandum; and the parties' Stipulation Regarding Transcript of First Meeting of Creditors.

2. This case is designated "CGC," constituting a proceeding initially assigned to the Hon. Charles G. Case. However, this judge hears most cases arising from northern Arizona on a monthly basis in Prescott, Arizona. Therefore, this matter was referred to this judge for a final decision.

3. All references are to the Bankruptcy Reform Act of 1978, as amended, unless otherwise indicated.

4. *See* Schedule B, Item 23, of the Schedules filed by the Debtors on May 24, 1994, Docket Entry No. 1.

5. *See* Schedule C, p. 2 of 2, third item from the top of the page, Docket Entry No. 1.

The Section 341 Meeting of Creditors was held on July 15, 1994 and continued to July 21, 1994. The parties stipulated that the Trustee, the Debtors and their counsel held certain discussions off the record at the Section 341 Meeting of Creditors on July 21, 1994, that there was an inspection of the vehicle after that Continued Meeting of Creditors and then further off-the-record discussions were held.[6] During the 341 Meeting, the Trustee discussed the Debtors' claimed exemption of $3,000 and the Debtors' market valuation of the vehicle. The Trustee reviewed the low Blue Book with the Debtors and their attorney. The Trustee stated that he believed the vehicle had a value of at least $6,700, not the $3,000 claimed by the Debtors. The Trustee stated:

> This is an asset we're going to have to deal with. I have a Blue Book sitting here and I was provided with 74,000 [as being the mileage on the vehicle]. If that is correct, your vehicle low Blue's at about 67 hundred dollars.[7]

The vehicle was available on July 21 for inspection, and apparently the Trustee viewed the vehicle that same day.[8] The Debtors were further advised that the Trustee wanted to administer the asset by selling it and possibly recovering some funds for the estate.[9] However, the Trustee also stated

> At this point it looks like I'm going to object to the exemption, and will be looking to see whether it should be turned over for sale or whether the Jacksons can buy the vehicle back with Court approval. And I will check with the U.S. Trustee's Office.[10]

The Trustee does not allege the Debtors acted in bad faith. The Court's review of the 341 Meeting Transcript does reflect that the Debtors had apparently had the vehicle independently viewed and informally valued at $3,000 by a local Ford dealer.[11]

Subsequently, the Debtors filed on August 25, 1994, Amended Schedules B, C and D.[12] However, the Schedules were *not* amended as to the Ford Bronco.[13]

The Trustee did not file his objection to the Ford Bronco being claimed as exempt until August 31, 1994.[14] The Debtors immediately challenged the Trustee's Objection as being untimely filed. The Trustee then requested that counsel assist him in the matter. The Trustee's counsel asserted that the Trustee did not need to file an objection to challenge the Debtors' valuation of the vehicle and that the Trustee could request a turnover of the vehicle at any time, so long as the vehicle had not been abandoned from the bankruptcy estate or the bankruptcy case closed.

At oral argument, the Debtors' counsel argued that the equities were in favor of his clients. First, the Trustee stated that he would promptly file an objection to the Ford Bronco as being exempt, yet he did not act within the 30–day period after the conclusion of the 341 Meeting of Creditors. Second, the Debtors utilized the vehicle to drive to and from work. They did not have an alternative means of transportation. Third, the Debtors had no surplus cash to purchase the vehicle at a private sale or an auction, as contemplated by the Trustee. The Trustee's counsel did not disagree with these statements, but noted the public policy concerns if the trustees had to review schedules to make sure not only that all debtors were properly listing property that could be claimed exempt and had properly listed the amount of the statu-

---

6. *See* Stipulation Regarding Transcript of First Meeting of Creditors, dated November 1, 1994, but filed on November 7, 1994, Docket Entry No. 25.

7. *See supra*, note 6.

8. *See supra*, note 6.

9. *See supra*, note 6.

10. *See supra*, note 6.

11. *See supra*, note 6.

12. *See* Docket Entry No. 14.

13. *See* Schedule B, Item 23, and Schedule C, p. 2 of 4, third item from the top of the page, Docket Entry No. 14.

14. The Objection is dated August 27, 1994, but was not filed with the Court until August 31, 1994. (*See* Docket Entry No. 12.)

tory exemption to which they were entitled, but that the debtors were also appropriately valuing all of the property as set forth in their schedules.

### Legal Analysis

■ This Court already outlined the issue presented in this matter as a part of its preliminary statement. This Court could find no cases directly on point to resolve the matter. To resolve the issue, this Court must consider when exempt property is removed from the bankruptcy estate, when the basis of the exemption is predicated, at least in part, on value.

■ The Court must initially analyze Arizona law to determine the Debtors' basis for the claimed exemption. Arizona is an opt-out jurisdiction.[15] Therefore, the debtors in Arizona must base their claim of exemptions principally on Arizona law.[16] The Debtors relied on *Ariz.Rev.Stat.Ann.* § 33–1125(8) (West 1990) to claim an exemption as to their Ford Bronco. This section states, in relevant part:

> The following property of a debtor used primarily for personal, family or household purposes shall be exempt from process:
>
>    *     *     *     *     *     *
>
> (8) One motor vehicle not in excess of a fair market value of one thousand five hundred dollars. If the debtor is maimed or crippled, the fair market value of the motor vehicle shall not exceed four thousand dollars.

Two debtors may combine their claim of exemptions as to personal items.[17] Therefore, the Debtors correctly listed in their

Schedules the exempt amount of the jointly owned Ford Bronco as $3,000. The Debtors have no other motor vehicle for which Section 33–1125(8) would apply. Moreover, the Debtors appropriately designated the type of property upon which they could claim an exemption and appropriately stated the statutory amount which could be asserted as exempt by them.

However, the *Debtors'* market value of the vehicle would have immediately removed the property from the estate, since the Debtors' market value equaled the statutory amount claimed as exempt. On the other hand, the *Trustee's* analysis of market value indicated that the vehicle could be sold, the Debtors paid their exempt amount, and there would be perhaps $3,000 for the bankruptcy estate.

In the decision of *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 1646, 118 L.Ed.2d 280 (1992), the debtor listed a discrimination lawsuit on her schedules, and she described this exempt property as "Proceeds from lawsuit—[Davis] v. TWA" and "claim for lost wages." She listed the value of this property as "unknown." *Id.* at 640, 112 S.Ct. at 1646. At the 341 Meeting of Creditors, the debtor stated that she might receive $90,000 from the lawsuit. *Id.,* at 640, 112 S.Ct. at 1646. Thereafter, the trustee stated, in a letter to the debtor, that he considered the lawsuit to be an asset of the estate. *Id.,* at 640, 112 S.Ct. at 1646. The debtor provided additional information as to the matter, but the trustee never objected to the claim of exemption, believing the lawsuit had little value. *Id.* at 640–41, 112 S.Ct. at 1647. Unfortunately for the trustee, the debtor recovered the sum of $110,000. *Id.* at 641, 112 S.Ct. at 1647.

---

**15.** *Ariz.Rev.Stat.Ann.* § 33–1133 (West 1990) provides as follows:

    **A.** Nothing in this article shall be construed to displace other provisions of law which afford additional or greater protection to a debtor's property.

    **B.** Notwithstanding subsection A, in accordance with 11 U.S.C. § 522(b), residents of this state are not entitled to the federal exemptions provided in 11 U.S.C. § 522(d). Nothing in this section affects the exemptions provided to residents of this state by the constitution or statutes of this state.

**16.** Of course, pursuant to 11 U.S.C. § 522(b)(2)(A), debtors in Arizona may be enti-

tled to certain exemptions as a result of federal law. *See,* for instance, *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).

**17.** *Ariz.Rev.Stat.Ann.* § 33–1121.01 (West 1990) provides as follows:

    **Availability of exemptions**

    In the case of married persons, each spouse is entitled to the exemptions provided in this article, which may be combined with the other spouse's exemption in the same property or taken in different exempt property.

■ The Supreme Court then noted that upon the filing of a bankruptcy petition, all of the debtor's property becomes property of the bankruptcy estate. *Id.* at 642, 112 S.Ct. at 1647. Although not discussed in *Taylor v. Freeland & Kronz,* there is certain property that is carved out of the initial bankruptcy estate, but it is specifically enumerated. *See* 11 U.S.C. § 541(b) and (c)(2).[18] 11 U.S.C. § 522(e) then states, in part:

> ... unless a party in interest objects, the property claimed as exempt on such list is exempt.

Thus, certain property may initially be included as part of the bankruptcy estate, but it may be removed from the estate through the exemption process.

However, the Supreme Court then noted that the *nature* of the property claimed as exempt was not in error, but the value was. The court stated

> The parties agree that Davis did not have a right to exempt more than a small portion of these proceeds either under state law or under the federal exemptions specified in § 522(d).

*Taylor v. Freeland & Kronz,* 503 U.S. at 642, 112 S.Ct. at 1647.

Although not directly on point, this Court should also analyze the post-*Taylor* decision of *In re Graziadei,* 32 F.3d 1408 (9th Cir. 1994). The debtor, George Graziadei, commenced divorce proceedings against his wife, Marlys Graziadei, at a time when he was attempting to reorganize pursuant to Chapter 11. The debtor apparently claimed his home as exempt property on his Schedules and listed the amount of $95,000 as exempt pursuant to Nevada law. *Id.* at 1410.

During the course of the divorce proceedings, the state court independently determined that the debtor could claim $40,000 as his exempt homestead property and that the debtor should pay $23,365.20 in attorneys' fees to his wife's lawyer. The state court was unsure of its jurisdiction over the homestead property; therefore, it did not specify the source for the payment of the attorneys' fees of the wife. *Id.*

During the course of the Chapter 11 proceedings, the homestead property was sold and, apparently, the net proceeds were within the statutory exemption claimed by the debtor on his schedules. The bankruptcy court determined that it had subject matter jurisdiction to order the sum of $23,365.20 be paid to the wife's attorney from the net proceeds received by the debtor from the homestead property. *Id.* The Ninth Circuit concluded that

> Because the sale proceeds of the [debtor's] home fell within the homestead exemption he was awarded, the bankruptcy court

---

**18.** 11 U.S.C. § 541, Subsection (b) and (c)(2) list the property which is carved out as property of the estate. These Subsections provide:

(b) Property of the estate does not include—

(1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor;

(2) any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case;

(3) any eligibility of the debtor to participate in programs authorized under the Higher Education Act of 1965 (20 USC 1001 et seq.; 42 USC 2751 et seq.), or any accreditation status or State licensure of the debtor as an educational institution or;

(4) any interest of the debtor in liquid or gaseous hydrocarbons to the extent that—

(A) the debtor has transferred or has agreed to transfer such interest pursuant to a farmout agreement or any written agreement directly related to a farmout agreement; and

(B) but for the operation of this paragraph, the estate could include such interest only by virtue of section 365 or 544(a)(3) of this title.

Paragraph (4) shall not be construed to exclude from the estate any consideration the debtor retains, receives, or is entitled to receive for transferring an interest in liquid or gaseous hydrocarbons pursuant to a farmout agreement.

\* \* \* \* \* \*

(c) ... Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate ...—

\* \* \* \* \* \*

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

lacked jurisdiction to order the Trustee to turn those funds over to a third party. *Id.*

The troubling part of the analysis in *Graziadei* is at what point did the bankruptcy court lose subject matter jurisdiction over the homestead property. Initially the homestead property is property of the bankruptcy estate. *Sierra Switchboard Co. v. Westinghouse Electric Corp.*, 789 F.2d 705 (9th Cir.1986). The debtor may remove property from the estate by claiming an exemption. *Owen v. Owen*, 500 U.S. 305, 307, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991). The creditors and interested parties should have a period of time to review the property and determine whether the property exceeds the amount claimed exempt and should be sold and distributed to creditors. Therefore, the *Graziadei* decision should be construed narrowly and its holding limited to those instances in which property of the estate, that may be wholly or partially exempt, is sold prepetition or postpetition *and* the net proceeds received are less than the statutory exemption claimed by the debtor. For instance, the postpetition sale of the property effectively determines that there are no proceeds in excess of the amount claimed exempt; hence, the bankruptcy court no longer has subject matter jurisdiction to determine how the proceeds should be distributed. However, the bankruptcy court will not be divested of subject matter jurisdiction until the property has been sold (either prepetition or postpetition) *and* it is determined that there are no excess proceeds for the bankruptcy estate. A broader reading or interpretation of *Graziadei* effectively overrules the prior decisions of *Schwaber v. Reed (In re Reed)*, 940 F.2d 1317, 1321 (9th Cir.1991); *Robertson v. Alsberg (In re Alsberg)*, 161 B.R. 680 (9th Cir. BAP 1993); and *Hyman v. Plotkin (In re Hyman)*, 123 B.R. 342, 346 (9th Cir. BAP 1991), *aff'd*, 967 F.2d 1316 (9th Cir.1992). It is this Court's conclusion that the Ninth Circuit did not intend in the *Graziadei* decision to overrule the prior precedent.

Having determined the limited effect of the *Graziadei* decision on the issues before this Court, the Bankruptcy Appellate Panel

decision of *Bronner v. Gill (In re Bronner)*, 135 B.R. 645 (9th Cir. BAP 1992), although pre-*Taylor*, is relevant to a discussion of the issues before this Court.

In the *Bronner* decision, the debtors filed a Chapter 7 petition and claimed certain property as exempt in the amount of $4,056.44, and claimed the equity in a bad faith lawsuit against Liberty Mutual Insurance Company, valued at $6,000, also as exempt. *Id.* at 646. The debtors also stated that the market value or value of the lawsuit was "unascertained." *Id.* Therefore, the debtors claimed exemptions pursuant to Section 522(d) of the Bankruptcy Code in the aggregate amount of $10,056.44. The Trustee did not object to these claimed exemptions. *Id.*

The debtors subsequently received their discharge, and the bankruptcy court approved the trustee's compromise of the Liberty Mutual lawsuit for the sum of $35,000. After payment of the attorneys' fees and costs incurred in the pursuit of the lawsuit, the debtors requested that the balance of $19,484 be turned over to them. *Id.*

The Bankruptcy Appellate Panel concluded that the lawsuit became property of the estate at the time the debtors filed their Chapter 7 petition. *Id.* at 647. The debtors' entitlement or right to claim certain property as exempt was determined by the applicable law in effect at the time the debtors filed their bankruptcy petition. According to the debtors' schedules, the Debtors' claimed exemption in the lawsuit at the time of filing was $6,000, and the maximum amount of all exemptions pursuant to Section 522(d) could not exceed the $15,800 limit. *Id.* The Panel concluded the trustee need not file an objection to the claimed exemption under such a scenario. If the debtors had "valued the lawsuit at an amount exceeding the $15,800 exemption ceiling" then the trustee could have filed an objection to the exemption. *Id.* at 647. The Panel concluded that the trustee's *not* objecting to the exemption resulted in the debtors having a valid statutory basis for the claim of exemption, with the claim to

remain subject to the maximum amount of $15,800. *Id.* at 648. The Panel did note that the trustee had retained counsel to pursue the lawsuit on behalf of the bankruptcy estate. The trustee, therefore, believed the lawsuit had value in excess of the maximum amount of $15,800 to be claimed exempt by the debtors. Since there was a surplus value for the estate, the trustee had a duty to reduce the lawsuit to cash. The debtors and the trustee had an interest in the lawsuit, with the trustee's interest to be in excess of the amount claimed by the debtors. *The means by which to remove the lawsuit as property of the estate would have been to have the debtors or the trustee request abandonment of the lawsuit. Id.*

Turning to the decisions in other circuits, the Seventh Circuit has followed the reasoning of the decisions of *In re Bronner* and *In re Hyman* in its post-*Taylor* analysis. *See In re Salzer,* 52 F.3d 708 (7th Cir.1995). The *Salzer* decision focused on whether a creditor had violated the automatic stay. The debtor had converted the proceedings from a Chapter 11 to a Chapter 7. *Id.* at 710. The trustee did not object within 30 days of the conclusion of the Section 341 meeting to the debtor's claim of exemption in certain personal property utilized by the debtor in his business. *Id.* at 710–11. The applicable state law provided that an appraisal be obtained by the "officer holding the execution" (in this case, the trustee) to determine if the market value or "true value" of the property coincided with the debtor's valuation and did not exceed the statutory maximum. *Id.* at 711–12. Any property exceeding the statutory maximum would be sold. *Id.* at 712. The property remained part of the estate until its value could be definitively ascertained. A failure to object to an exemption waived the trustee's ability to contest the *validity* of the exemption, it did not waive the estate's ability to recover the *value* in the property in excess of the exemption amount. *Id.*[19]

The *Salzer* decision did not consider those instances when the trustee conducted an investigation of the value of the property for a period of time and then determined that the claimed exemption was equal to or less than the value or market value of the property. *Id.* at 712, note 5. Therefore, the *Salzer* decision does not address the precise issue before this Court.

Another circuit decision, *Mercer v. Monzack,* 53 F.3d 1 (1st Cir.1995), came to a similar conclusion in a post—*Taylor* analysis. In the *Mercer* decision, the debtor filed a Chapter 7 petition and listed a personal injury claim as exempt. The debtor allocated the claim as follows:

| TYPE OF PROPERTY: Location, Description, Use | STATUTE | EXEMPT AMOUNT |
| --- | --- | --- |
| Possible personal injury settlement Disability | 11 U.S.C. § 522(d)(10)(C) | 100% |
| Payment on account personal bodily injury | 11 U.S.C. § 522(d)(11)(D) | $7,500 |
| Payment in compensation for loss of future earnings | 11 U.S.C. § 522(d)(11)(E) | 100% |
| Any property selected by the debtor[20] | 11 U.S.C. § 522(d)(5) | $3,750 |

---

**19.** However, the *Salzer* court went on to conclude that the trustee had the right to possession of the personal property claimed as exempt. The court relied solely on applicable state law for its conclusion. Having determined that the trustee had the right to possession, not the debtor, the trustee could direct that a third party secure the property on the trustee's behalf. This Court does not accept this portion of the *Salzer* decision and notes that it may be predicated solely on the unique provisions of the applicable state law. This Court is not holding that the trustee should take possession of household goods and furnishings and other items of personal property that are claimed as exempt under Arizona law.

**20.** *See In re Mercer,* 53 F.3d at 2, note 1.

The estate eventually received the sum of $50,000 in settlement of the personal injury claim. *Id.* at 1. However, there was no allocation of the proceeds to "disability," "personal bodily injury," or "loss of future earnings." *Id.* at 1–2. The debtor argued that the entire sum of $50,000 was exempt either as "disability" or lost future earnings, as to which the debtor had claimed a 100 percent exemption. *Id.* at 2. The trustee did not contest the ability of the debtor to claim $7,500 of the proceeds as exempt under the catch-all provision. *Id.* at 3. The First Circuit discussed the decision of the bankruptcy court, which had held that the trustee did not have to file an objection to an exemption unless a "red flag" had been raised. *Id.* For instance, if the debtor had only listed "disability" and no other categories, and had claimed 100 percent of the disability payment as exempt, such action would have constituted a warning to the trustee requiring the filing of an objection. *Id.* at 2.

The First Circuit concluded that a debtor may not unilaterally remove property from the estate merely by listing it as exempt on the debtor's schedules. The First Circuit emphasized that the bankruptcy court was not divested of subject matter jurisdiction as a result of the debtor's actions. *Id.* at 2–3. The First Circuit rejected the debtor's argument that 100 percent of the settlement proceeds were exempt, concluding (as did the bankruptcy court) that the listing of several categories, the different amounts or percentages listed in each category, and the failure of the settlement proceeds to be allocated to any category vitiated the debtor's argument. *Id.* at 3.

The First Circuit stated:

Neither *Taylor*, the Code, nor the Rules of Bankruptcy Procedure require parties in interest to interpose Rule 4003(b) objections to Schedule B–4 exemption claims in order to preserve their right to invoke the summary jurisdiction of the bankruptcy court to determine whether property of the estate became exempt *by operation of law.* What parties in interest may not do, however, is let the limitation period for objection under Rule 4003(b) expire, then enlist the jurisdiction of the court in an effort to set aside an exemption allowed by operation of law in property of the estate under section 522(1) simply because the property listed as exempt would not have been entitled to exemption under section 522(d) but for their failure to object pursuant to Rule 4003(b).

*Id.* at 3–4. Therefore, the debtor's specific dollar limitations and the debtor's failure to allocate the proceeds to those categories where the debtor had utilized the term "100%" exempt limited the debtor's recovery.

The other circuit decision, *Allen v. Green (In re Green),* 31 F.3d 1098 (11th Cir.1994), focused on the effect of the debtor listing a contingent claim concerning the recovery from a lawsuit for an automobile accident and valuing the lawsuit at only $1.00. However, the facts in this case relate to the Debtors' listing a specific asset, a specific statutory exemption therefor, and the Debtors' proposed market value for the asset. Therefore, the *Green* decision does not address the issues before this Court.

In this case, the Debtors have been specific as to the claimed exemption. There are no ambiguities which should somehow be construed against the Debtors.[21]

Certainly the Debtors will experience a hardship if their only mode of transportation is turned over to the Trustee, who then takes a week, perhaps two, to sell the vehicle, additional time to receive the net proceeds therefrom, and then yet more time to distribute to the Debtors the amount of their exemption. Nor will any great benefit to the estate enure from the Trustee's actions. This Trustee will net perhaps $3,000 for this

---

**21.** *See,* for instance, *Seror v. Kahan (In re Kahan),* 28 F.3d 79 (9th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1100, 130 L.Ed.2d 1067 (1995). In *Kahan,* the debtor's initial Schedule B–4 reflected that the debtor claimed as exempt the property held in joint tenancy with his wife to the extent of $45,000. *Id.* at 80. The debtor subsequently filed an amended Schedule B–4 in which the debtor claimed "an exemption for his entire joint tenancy interest in the Property; the stated fair market valued of his one-half interest was $187,500.00. In addition the Amended Schedule stated that if the Property were sold, Mr. Kahan would be entitled to $45,000.00 of the sale proceeds pursuant to § 704.730(a)(2)." *Id.* The court held that the Amended Schedules entitled the debtor only to a $45,000 exemption.

estate, of which the vast majority will be turned over to the Trustee and his counsel as administrative expenses.

However, based upon the reasoning of *Bronner, Salzer* and *Mercer,* the Debtors must be allocated the amount of $3,000 for their exemption, with any surplus value to remain a part of the bankruptcy estate for distribution to creditors. By not using the term "100% exempt", or other language, to provide a warning or a red flag to the Trustee, the Debtors limited their recovery to the precise statutory amount that they claimed as exempt.

The Trustee may proceed with a liquidation of the 1986 Ford Bronco. The Trustee shall also submit a form of order which is consistent with this Decision.