In re J. Richard CALDER, Debtor.

J. Richard CALDER, Plaintiff,

v.

Roger SEGAL, Trustee, Defendant.

Bankruptcy No. 86A–03558.
Adv. No. 88PA–0021.

United States Bankruptcy Court,
D. Utah, C.D.

Dec. 8, 1988.

Julie Bryan, Salt Lake City, Utah, for trustee, Roger Segal.

Carl A. Eklund, Roath & Brega, P.C., Denver, Colo., for debtor.

## ORDER

JOHN H. ALLEN, Bankruptcy Judge.

This matter came before the Court on July 17, 1988, on the Plaintiff's Motion for Summary Judgment. After a careful review of the law relating to this motion, the Court makes the following determination.

## BACKGROUND

The debtor, J. Richard Calder, (Plaintiff) filed his petition for bankruptcy under chapter 7 of the Bankruptcy Code on August 19, 1986. The defendant, Roger G. Segal, (Defendant) is the trustee of the plaintiff's chapter 7 estate.

Pursuant to his duties as trustee of the estate, defendant received from the chapter 13 trustee a series of checks representing attorney's fees for certain of plaintiff's pre-petition services to chapter 13 clients. The Court is called upon to decide whether those fees are property of the estate under 11 U.S.C. § 541. This is the only issue brought by the Complaint.

The defendant claims all fees for plaintiff's services in cases filed before August 19, 1986, the date of the filing of plaintiff's petition, asserting they represent compensation for pre-petition services rendered by the plaintiff. The plaintiff alleges that the fees currently held by the defendant are not property of the estate and should be turned over to the plaintiff by the defendant.

Plaintiff argues that the post-petition payment of allowed attorney's fees are not property of the bankruptcy estate since the fees were based upon pre-petition contingent fee agreements which made payment of fees contingent upon confirmation of the clients' chapter 13 plans, and none of the fees held by the defendant were for plaintiff's services in cases in which the plans were confirmed prior to the filing of the chapter 7 petition. Plaintiff further argues that these contracts are executory contracts, specifically personal service contracts, which cannot be assumed by the defendant and the benefits running from these contracts cannot become property of the estate.

## DISCUSSION

Property of the estate is defined in 11 U.S.C. § 541. The commencement of a bankruptcy proceeding creates an estate which is comprised of the debtor's property wherever it may be located. All of the debtor's interest in property, legal or equitable, becomes property of the estate. Aside from exemptions, assets the debtor has on the date of the petition go to the creditors, assets obtained afterwards belong to the debtor. This section is extremely broad and covers both tangible and intangible property, causes of action and property that is out of the debtor's control. Additionally, an interest in property which is acquired by the estate after the proceeding is commenced is estate property. Further, the proceeds, rents, or profits received from property of the estate are also estate property. 11 U.S.C. § 541(a). An important exception contained within this subsection is "for earnings from services performed by an individual debtor after the commencement of the case."

The legislative history of § 541(a)(6) states that the word "proceeds" is not to be defined as narrowly as the definition in the Uniform Commercial Code. S.Rep. No. 989, 95th Cong. 2nd Sess. 82, H.R.Rep. No. 595, 95th Cong. 1st Sess. 368, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868, 6323. That being so, then the meaning is exceedingly broad. For example, the Court in *In re No. 1 Con-Struct Corp.*, 88 B.R. 452 (S.D.Fla.1988) ruled that the debtor's interest as beneficiary and owner of an insurance policy became property of the estate. Therefore, the trustee not only owned the policy and the beneficial interest, but he also had the right to change

beneficiary and had all the rights to the proceeds. Other examples of property of the estate include post-petition appreciation in value of property, *In re Paolella*, 85 B.R. 974 (Bkrtcy.E.D.Pa.1988); earnings from debtor's law practice, which resulted not from debtor's personal service but from the practice's invested capital, accounts receivable, good will, employment contracts with the firm's staff, client relationships, fee agreements, or the like, *In re Fitzsimmon's*, 725 F.2d 1208 (9th Cir.1984); percentage of post-petition income from debtor surgeon's business operated as sole-proprietorship, which resulted from return on fixed assets and services performed by associate surgeons, *In re Cooley*, 87 B.R. 432 (Bkrtcy.S.D.Texas, 1988).

As yet another example of the meaning of this provision, sellers of insurance at times have rights to renewal commissions and other rights growing out of termination of their employment with the companies. It has been held that if the rights were earned by services performed before the petition for relief, the payments made after it are nevertheless assets of the estate. The Court so holding regarded the continuing obligation of the sales person as rather minimal in the matter before it. *In re Marshburn*, 5 B.R. 711 (Bkrtcy.D.Colo. 1980).

■ In the case of the individual debtor with earnings from services, § 541(a)(6) creates two pools of assets. One consists of property of the estate, while the other consists of property of the debtor. This result follows from the fact that an individual debtor and the estate are separate entities. *In re Myrvold*, 44 B.R. 202, 204 (Bkrtcy.D.Minn.1984) aff'd, *Koch v. Myrvold*, 784 F.2d 862 (8th Cir.1986). Post-petition wages and earnings are not included as property of the estate. Wages and earnings to be included in the debtors estate are those earned pre-petition but unpaid at the time of filing. *Matter of Hellums*, 772 F.2d 379 (7th Cir.1985); *In re Ryerson*, 739 F.2d 1423, 1426 (9th Cir. 1984); *In re Meade*, 84 B.R. 106 (Bkrtcy.S. D.Oh.1988); *In re Leff*, 84 B.R. 72 (Bkrtcy. N.D.Tex.1988).

The idea that earnings from services performed prior to bankruptcy but paid after filing of the petition are to be included within the bankruptcy estate stems from prior law. The test that has emerged under the Code is whether the after-acquired property is "sufficiently rooted in the pre-bankruptcy past". *See* S.Rep. No. 989, 95th Cong. 2d Sess. 82, U.S.Code Cong. & Admin.News 1978, p. 5868. Stated differently, if these pre-petition earnings are in essence, accounts receivable, they are property of the estate, *In re Fitzsimmon's*, 725 F.2d at 1208.

The Court in *In re Ryerson*, 739 F.2d 1423, pointed out that if there is a legally recognizable interest pre-petition to payments subsequently paid post-petition, these payments are property of the estate.

Although plaintiff submits an affidavit which contains a sample contingent fee agreement, the Court is not convinced that the plaintiff operated under this type of agreement with his clients. He has not produced any actual agreements, nor have any been approved by the Court. *In re Benassi*, 72 B.R. 44 (D.Minn.1987). In fact, all the plaintiff's § 329 attorney's fee disclosure statements and applications for attorney's fees (Defendant's Exhibit B) set forth a fixed rate that the plaintiff will collect from his clients.

These disclosure statements list an amount as having been paid and an additional amount to be paid. The chapter 13 plans drafted by the plaintiff, (Defendant's Exhibit D), list a fixed sum as "unpaid attorney fees" and the orders confirming the plans (Defendant's Exhibit E) allow for such payment. The chapter 13 Statements (Defendant's Exhibit "C") filed by the various debtors contain promises to pay the plaintiff a fixed amount in connection with each case.

■ The plaintiff relies on *In the Matter of Tonry*, 724 F.2d 467 (5th Cir.1984) in which the court found that contingent fee contracts of a debtor-attorney are excluded from the bankruptcy estate. The court identified the contracts in question as personal service executory contracts that cannot be assumed by the trustee in bankrupt-

cy. However, the court in *Tonry* does not explain that pursuant to chapter 7 of the Bankruptcy Code there is an automatic rejection of executory contracts under 11 U.S.C. § 365(d)(1). *Matter of Noonan*, 17 B.R. 793 (Bkrtcy.S.D.N.Y.1982). A debtor filing a chapter 7 liquidation case automatically severs a personal service contract. *In the Matter of James Taylor*, 91 B.R. 302 (Bkrtcy.N.J.1988). *Tonry* was a case under chapter 7. The better authority for the facts before this Court is *Cooley*, 87 B.R. at 444 where the court focused not on the contracts, but on the services that continued to generate post-petition income. The court reasoned that it would be "inequitable to allow the debtor to control, by the decision to withhold assumption of these contracts, whether the income attributable to the doctor's services accrues to himself or to the estate". Although *Tonry* was a case under chapter 7 and *Cooley* a case under chapter 11, *Cooley* stands for the proposition that income which is paid post-petition from pre-petition executory contracts should equitably flow to the estate.

█ The Court believes the debtor's argument concerning the trustee's right to assume or reject this personal service contract is without merit. It was automatically rejected. The only issue which is worthy of consideration is the determination of what services were *actually* performed pre-petition. The debtor-attorney in this case, unlike *Tonry*, is a bankruptcy attorney who is required to file all fee arrangements in accordance with 11 U.S.C. § 329. Professional persons, such as this debtor, are required to attach to all applications for allowance of fees and expenses, detailed itemizations of services performed, identified as to date. *In re Jensen Farley Pictures, Inc.*, 47 B.R. 557 (Bkrtcy.D.Utah 1985). Consequently, it merely requires a simple accounting to distinguish between services which were performed pre-petition and those performed post-petition.

Based on the authorities cited above, there is no doubt that the post-petition earnings of this debtor are in actuality "proceeds" from pre-petition services and these earnings are property of the estate.

Therefore, the Court rules that the fee agreements between the plaintiff and his chapter 13 clients are not contingent fee agreements, but are those authorized for reasonable and necessary services and these fees, paid post-petition for services performed pre-petition, are property of the plaintiff's bankruptcy estate.

Under Rule 56, the Court, upon motion by one party for summary judgment has the power to grant summary judgment against the moving party and in favor of the non-moving party, although the latter has not filed a cross-motion for summary judgment. *Procter & Gamble Independent Union v. Gamble Mfg. Co.*, 312 F.2d, 181, 190 (2nd Cir.1962), *cert. denied*, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963); *Factora v. District Director of U.S. Immigration and Naturalization Service*, 292 F.Supp. 518, 521 (C.D.Cal. 1968); *National Savings & Trust Co. v. Sarolea*, 269 F.Supp. 4, 7 (D.D.C.1967).

ACCORDINGLY, IT IS THEREFORE ORDERED that the plaintiff's Motion for Summary Judgment is denied and it further ORDERED that summary judgment is granted in favor of the defendant. The chapter 13 fees at issue in this case are those authorized for reasonable and necessary services under § 330 of the Bankruptcy Code and the fees attributable to services rendered by the plaintiff prior to August 19, 1986 are property of the plaintiff's bankruptcy estate.

Summary Judgment having been granted, this adversary proceeding is hereby dismissed.