UNITED STATES of America, Plaintiff,

v.

Michael Robert McINTOSH, Defendant.

Criminal Action No. 95–20082.

United States District Court,
D. Kansas.

May 17, 1996.

Bruce W. Simon, Simon & Simon, Kansas City, MO, for Michael R. McIntosh.

Robert S. Streepy, Office of United States Attorney, Kansas City, KS, for U.S.

### MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on defendant's post-trial renewal of his motion for judgment of acquittal (Doc. # 55). For the reasons set forth below, defendant's motion will be denied.

Defendant was charged in a thirteen count superseding indictment with three counts of bankruptcy fraud, in violation of 18 U.S.C. §§ 152 and 2, and ten counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1957 and 18 U.S.C. § 2. Following a three-day trial, the jury convicted defendant of all counts. Defendant timely filed the instant motion renewing his earlier motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c), claiming that the government's evidence was insufficient to sustain his conviction on Counts 3, 4–12, and 13. Defendant also challenges the court's refusal to give defendant's proposed jury instruction on the advice of counsel defense.

In deciding defendant's motion for judgment of acquittal, we must view all evidence "in the light most favorable to the government, 'recogniz[ing] the right of the jury to determine credibility and to find the facts.' " *United States v. Fleming*, 19 F.3d 1325, 1328 (10th Cir.1994) (citing *United States v. White*, 673 F.2d 299, 301 (10th Cir.1982)). Judgment of acquittal is only proper if "the evidence that the defendant committed the crimes alleged is so meager that 'no reasonable jury could find guilt beyond a reasonable doubt.' " *Id.*

The abbreviated pertinent facts are as follows. On November 12, 1991, defendant filed a voluntary Chapter 11 bankruptcy petition, stating that it was filed on an emergency basis because he was to be evicted from his office on November 14, 1991. In connection with the bankruptcy proceedings, defendant filed a Schedule of Assets and Liabilities and a Statement of Financial Affairs with the bankruptcy court on January 7, 1992.

On January 21, 1992, the bankruptcy court ordered defendant to furnish the bankruptcy trustee with required financial information on a monthly basis. Defendant did not file the required monthly reports for the months of November 1991, December 1991, January 1992, and February 1992 until April 13, 1992. Defendant filed the March 1992 report on July 1, 1992.

On March 20, 1992, the United States Attorney for the District of Kansas filed a Motion to Determine Secured Status and for Turnover of Security in defendant's bankruptcy case. The motion specifically referred to the attorney's fee defendant was soon to receive for his representation of the plaintiff in the *Pilcher v. Board of Wyandotte County Commissioners*, No. 88C641 case.

On March 24, 1992, the Wyandotte County District Court of Kansas City, Kansas, issued a check payable to the order of Wanda Pilcher and Michael R. McIntosh in the amount of $256,163.20. On March 26, 1992, the defendant and Wanda Pilcher negotiated the check at the Brotherhood Bank in Kansas City, Kansas, and used the proceeds to purchase seven cashier's checks. Five checks totalling $125,000 were made out to Wanda Pilcher. Defendant received two checks: one for $57,500 made out to McIntosh, Chartered, and one for $68,000 made out to Michael R. McIntosh.

That same day, defendant negotiated the $68,000 cashier's check at Commerce Bank in

Kansas City, Missouri. Defendant conducted the following transactions with the proceeds: (1) received $4,500 in cash; (2) deposited $22,684.19 into an account in the name of Fortex Industries ("Fortex"); and (3) purchased $46,664.81 in cashier's checks made out to various individuals and entities. None of the payees of the cashier's checks were listed as creditors in defendant's bankruptcy filings. One of the cashier's checks purchased, in the amount of $6,000, was payable to defendant's ex-wife for a property settlement and alimony. Defendant purchased another cashier's check for $14,465.81 made payable to Citizen's Bank and used it to pay off a loan on residential property in his father's name.

On April 13, 1992, defendant disclosed in his brief in response to the government's Motion for Turnover of Security that he had received $57,500 of the $125,500 *Pilcher* fee. On June 2, 1992, defendant tendered copies of the *Pilcher* contingency fee contract and the $57,500 check to the bankruptcy court. There was no evidence at trial that the $68,000 fee check, made payable to McIntosh personally, was ever disclosed to the bankruptcy court.

■■■ At the heart of defendant's motion to dismiss is his argument that he could not be convicted of bankruptcy fraud for failing to disclose any of the attorney's fee received in connection with his representation in *Pilcher*, because the fee was not material to the bankruptcy proceeding. Although not expressly included in the statute, case law has engrafted materiality as a required element of the crime of bankruptcy fraud. *United States v. Grey*, 56 F.3d 1219, 1223 (10th Cir.1995). Thus, the jury was instructed that to prove that the defendant committed bank-

ruptcy fraud, the government was required to prove the following elements of an offense under 18 U.S.C. § 152: (1) that a proceeding in bankruptcy under Title 11 existed; (2) that the defendant concealed property which belonged to him in connection with that proceeding; (3) that the concealment concerned a material fact;[1] and (4) that the defendant did so knowingly and fraudulently, with the intent to defeat the provisions of Title 11 of the Bankruptcy Code.

At trial, defendant offered the testimony of Professor Ron Griffen, who opined that because the fee was an executory contract, and also because it was a personal service contract, it was excludable from the bankruptcy estate. Based on that testimony and *Turner v. Avery*, 947 F.2d 772 (5th Cir.1991), *Matter of Tonry*, 724 F.2d 467 (5th Cir.1984), and *U.S. v. Key*, 859 F.2d 1257 (7th Cir.1988), defendant argues that the Pilcher fee was not material, as a matter of law, because it was excludable from the bankruptcy estate. Defendant acknowledges that materiality is a factual question for the jury. *See United States v. Gaudin*, — U.S. —, —, 115 S.Ct. 2310, 2320, 132 L.Ed.2d 444 (1995) (materiality is a jury question in a 18 U.S.C. § 1005 case). However, defendant argues that he is entitled to a judgment of acquittal because the government did not offer any evidence to controvert Professor Griffen's testimony regarding the excludable nature of the *Pilcher* fee as an executory personal service contract.

Quite to the contrary, Mr. Wieland, the bankruptcy trustee, testified that disclosure of the *Pilcher* fee was important to the bankruptcy proceedings for two reasons: (1) if the fee was determined to be pre-petition earnings, it would be included in the bankruptcy

---

1. The jury was instructed as follows regarding the definition of "materiality":

The term "material" means having the means having the tendency or the capability of influencing the actions of another, in this case, the bankruptcy court or the trustee. In a bankruptcy proceeding, material facts are those that have the tendency or the capability of affecting the termination of a debtor's eligibility to petition for bankruptcy, the determination of the debtor's purpose for filing the bankruptcy, or the determination of the debtor's general financial status.

Material information in a bankruptcy proceeding includes the nature and extent of the debtor's assets, matters relating to the debtor's business and financial transactions, and matters relating to the discovery of assets. Furthermore, any statements designed to secure adjudication by the bankruptcy court are material.

It is not necessary for the government to show that the alleged false declaration or statement harmed the creditors for the declaration or statement to be material.

estate; and (2) if the fee was determined to be post-petition earnings, it would be relevant to whether the defendant, as a debtor-in-possession, could fund his Chapter 11 bankruptcy plan. Either way, construing the evidence in the light most favorable to the government, the court finds that the evidence was sufficient to sustain the jury's verdict. The jury clearly had evidence before it from which it could determine that the defendant's concealment of the *Pilcher* fee concerned a material fact.

In his pretrial motion to dismiss the money laundering counts in the indictment based on temporal impossibility, defendant raised a related argument. We rendered a summary ruling denying the motion and reserved the right to render a more complete opinion on this issue in the future. To clarify the basis of our ruling, we believe that some further discussion of this issue is necessary.

Defendant argued that he had no duty to disclose the *Pilcher* fee, if at all, until after he actually received the money in March 1992, and filed the report for that month in July 1, 1992. Defendant, therefore, maintained that he could not be convicted of money laundering because the predicate act of bankruptcy fraud, as charged in Count 3, was not complete prior to the alleged acts of money laundering on March 26, 1992. *See United States v. Johnson,* 971 F.2d 562, 570 (10th Cir.1992).

We acknowledge that to commit money laundering by an act involving proceeds from illegal activity, the predicate act which generated the proceeds must be completed prior to the alleged act of money laundering. *See id.* However, under the evidence presented at trial, we disagree that the alleged bankruptcy fraud could not have occurred until July 1, 1992, when defendant filed the false monthly report for March 1992.

18 U.S.C. § 152 imposes criminal sanctions for concealment of property from the bankruptcy estate. This includes property with an unknown status in the bankruptcy. In *United States v. Cherek,* 734 F.2d 1248, 1254 (7th Cir.1984), the court stated:

It is a reasonable reading of 18 U.S.C. § 152 to conclude that the statute requires a bankrupt to disclose the existence of assets whose immediate status in bankruptcy is uncertain. Even if the asset is not ultimately determined to be property of the estate under the technical rules of the Federal Bankruptcy Code, Section 152 properly imposes sanctions on those who preempt a court's determination by failing to report the asset.

Although in different contexts, numerous other courts have held that a person filing a voluntary bankruptcy petition has a duty to disclose the existence of assets, even if the status of those assets in relation to the bankruptcy estate are uncertain. *See, e.g., In re Dreyer,* 127 B.R. 587, 597 (Bankr.N.D.Tex.1991) (denying discharge for fraudulent concealment of potential assets); *In re Calder,* 93 B.R. 734, 738 (Bankr.D.Utah 1988) (same).

We do not find *In the Matter of Tonry,* 724 F.2d 467 (5th Cir.1984), persuasive as authority in this case. *Tonry,* 724 F.2d at 468–69, simply stands for the proposition that, under the civil bankruptcy statutes in a Chapter 7 bankruptcy, a wholly executory contract is not part of a bankruptcy estate, but is post-petition income.

In *In re Calder,* 94 B.R. 200, 202–03 (Bankr.D.Utah 1988), *aff'd,* 912 F.2d 454 (10th Cir.1990), the court distinguished *Tonry,* 724 F.2d 467, and cited *In re Cooley,* 87 B.R. 432 (Bankr.S.D.Tx.1988), as better authority under facts similar to the instant case. The court held, "income which is paid post-petition from pre-petition executory contracts should equitably flow to the estate." *Calder,* 94 B.R. at 202–03.

Defendant cites *Turner v. Avery,* 947 F.2d 772, 774 (5th Cir.1991), for the proposition that executory personal service contracts are outside the bankruptcy estate. However, the *Turner* court held only that the executory contingent fee contracts at issue in that case were outside the bankruptcy estate. *Id.* Defendant ignores that the court expressly stated that fees earned on a contingent fee contract prior to the date of the filing of the bankruptcy petition are within the bankruptcy estate. *Id.* Thus, *Turner* validates the testimony of Mr. Wieland, the bankruptcy trustee, and highlights the importance of ten-

dering such an asset to the bankruptcy court for a determination of the status of the asset in the bankruptcy proceeding.

Significantly, the government did not charge defendant with concealing property belonging to the bankruptcy estate. This is a separate and distinct crime under section 152, from the crime with which defendant was charged, *i.e.*, with knowingly and fraudulently concealing "*his* property." There can be little doubt that when defendant received the check from Wyandotte County in payment of the judgment in the *Pilcher* case on March 24, 1992, the fee was "his property."

Count 3 of the indictment alleges that defendant committed bankruptcy fraud when, after receiving the check on March 24, 1992, he knowingly and fraudulently concealed the *Pilcher* fee, with the intent to defeat the provisions of the bankruptcy code. The real issue, then, is not whether the *Pilcher* fee was a part of the bankruptcy estate, but whether it was for the defendant or the bankruptcy court to make that determination. Clearly, section 152 imposed a legal obligation on defendant to permit that determination to be made by the bankruptcy court with respect to *all* of his property, not just property that he believed was part of the bankruptcy estate.

The evidence presented at trial supports the jury's conclusion that defendant concealed the *Pilcher* fee by failing to disclose it to the bankruptcy court, and that he did so with the intent to defeat the provisions of the bankruptcy code, by later negotiating the check and spending the proceeds before the money could become involved in the bankruptcy proceedings. Accordingly, the jury's verdict on Counts 3, 4–12, and 13 will not be disturbed.

■ Defendant also complains that the court erred in refusing to give the jury defendant's requested "advice of counsel" instruction, which defendant characterized as really an "error of counsel" instruction. This point is without merit. As we stated in denying defendant's requested instruction, defendant failed to present sufficient evidence that he adequately advised his attorney of all relevant information to warrant the giving of such an instruction. Moreover, this

alleged error does not form the basis for a judgment of acquittal, in any event. Taken as a whole, we believe the instructions "adequately stated the governing law and provided the jury with an accurate understanding of the issues and standards applicable." *Grey,* 56 F.3d at 1222.

IT IS THEREFORE ORDERED that defendant's motion for judgment of acquittal (Doc. # 55) is denied. The verdict of the jury is approved in all respects.