In re Dennis E. CARLSON, Debtor.

Bankruptcy No. 96 B 09606.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

April 24, 1997.

Mitchell E. Jones, Rooks, Pitts and Poust, Chicago, IL, for Debtor.

Steven S. Potts, Law Office of Andrew J. Maxwell, Chicago, IL, Chapter 7 Trustee.

## MEMORANDUM OPINION

JACK B. SCHMETTERER, Bankruptcy Judge.

The contested proceeding discussed here relates to the bankruptcy case originally filed by Dennis E. Carlson ("Debtor" or "Carlson") under Chapter 11 of the Bankruptcy Code, 11 U.S.C., *et seq.*, on April 16, 1996. On June 24, 1996, the case was converted to one under Chapter 7, and William A. Brandt Jr. was appointed as Chapter 7 Trustee ("Trustee").

Carlson is an Illinois attorney who does personal injury work. When he filed in bankruptcy, he represented a number of clients with personal injury claims or suits, with whom Carlson had entered into contingent fee agreements pre-bankruptcy. Prior to filing in bankruptcy, Mr. Carlson appears to have sought to assign some or all of his cases to another attorney and/or merge his practice with the other attorney.

On September 30, 1996, an order was entered ("September 30 Order") authorizing a Rule 2004 Examination of the Debtor. The Order required Debtor to prepare and provide to the Trustee and two interested creditors a list of any and all cases and matters in which Debtor was acting as attorney for any party as of June 24, 1996, all cases and matters which Debtor purported to transfer or assign to the other attorney, William E. Hourigan ("Hourigan"), and copies of all written agreement referring to a purported merger of Debtor's law practice with Hourigan's. The September 30 Order further provided, however, that the Trustee and the creditors were prohibited from contacting any and all clients or parties identified by Debtor or redisclosing such information to others without further order of court.

The Trustee filed the instant Motion for Turnover and Other Relief on December 31, 1996, based on Debtor's Rule 2004 testimony, wherein Debtor alluded to one or more fees received post-petition which fees the Trustee asserts may have been for services rendered pre-petition. Trustee argues that Debtor's pre-petition right to payment for legal services rendered prior to conversion of the bankruptcy case to one under Chapter 7 constitutes an asset of the bankruptcy estate and should be accounted for and turned over to the Trustee pursuant to 11 U.S.C. § 542(a).

The Trustee further alleges that Debtor failed to disclose all matters required by the September 30 Order, and therefore requests that the paragraph of the September 30 Order prohibiting Trustee from contacting Debtor's clients be vacated.

Debtor was granted time to file a response to Trustee's motion. In the meantime, in an order entered by Chief Judge Schwartz, then sitting in the absence of the undersigned, Debtor was ordered to deliver to and account to Trustee for any and all fee payments Debtor received subsequent to the date of the conversion into Chapter 7 for legal services rendered or costs expended by him on behalf of pre-conversion clients. *See* Order entered January 29, 1997. That Order was subsequently amended to suspend the requirement that Debtor physically deliver the subject funds to the Trustee, though information concerning such fees was still required from Debtor. *See* Order entered February 10, 1997.

On February 10, 1997, Debtor filed a response to Trustee's present Motion and moved to strike "purported facts alleged in Trustee Brandt's purported motion, which is an untimely filed adversary complaint...." However, Debtor failed to state which facts he wants stricken or any grounds for striking any facts. Debtor also argued that Trustee's request that paragraph four of the September 30 Order be vacated is without basis, unsupported, and should actually be set out in a separate motion. Debtor also argued that Trustee Brandt's motion is inadequately

stated, contended, factually proved or supported in law and not timely made. Moreover, according to Debtor, the motion should have been in the form of an adversary complaint "that can be the object of an attack by motion to strike or for summary judgment or other attack appropriate for such a complaint." In addition, Debtor argued that Trustee's "request to file a purported lien" would jeopardize his post-petition law practice.

Finally, Debtor argued that under Illinois law contingent fees of attorneys are not property or assets of the attorneys until collected. Thus, unless the contingent fees were collected at the time the bankruptcy petition was filed, he contended that such fees cannot be part of the bankruptcy estate. Debtor also argued that he did not receive any post-confirmation funds for pre-confirmation legal services and that his failure to disclose the identity of his clients as earlier ordered was due to exigent circumstances.

### Jurisdiction

This matter is before the Court pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157, and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E).

## DISCUSSION

### Procedural Issues

Several threshold issues can be addressed before discussing merits of the Trustee's motion.

Debtor argued that he has not been served with a copy of his 2004 examination transcript or any other transcript, and that he is entitled to a copy of any "document, thing, pleading, affidavit or transcript *submitted to the court* for consideration in ruling on any matter herein," but that he has no money to pay for any such transcript. ¶ 3,4 (emphasis added). However, no such transcripts have been submitted in support of the Trustee's motion, so that issue is moot.

■ Debtor also argued that the form of Trustee's motion was improper because it was not part of an Adversary proceeding. Adversary proceedings are governed by Part VII of the Federal Rules of Bankruptcy Procedure. Only those matters prescribed by Fed. R. Bankr.P. 7001 are required to be presented in the form of an Adversary complaint. Such matters include proceedings to recover money or property but expressly exclude "a proceeding to compel the debtor to deliver property to the trustee." Fed. R. Bankr.P. 7001(1). Contested matters not brought by Adversary proceedings are governed by Fed. R. Bankr.P. 9014 which provides that "relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Moreover, while Fed. R. Bankr.P. 9014 provides that the rules in Part VII of the Bankruptcy Rules apply in contested matters or may be ordered, not all of them so apply and none have yet been ordered here to apply in considering the instant motion. Federal Rule of Bankruptcy Procedure 7012 provides grounds for a motion to strike. It is not expressly applicable to contested matters under Fed. R. Bankr.P. 9014, but Rule 9014 provides that "[t]he court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply," so Debtor's motion to strike Trustee's motion for failure to state a basis for relief can certainly be entertained. To reach the merits of it now, Debtor's failure to file a separate motion apart from his argument will be overlooked, but he is advised that such omission will not always be overlooked.

■ Finally, Debtor argues that the Trustee's request that paragraph four of the September 30 Order be vacated should have been set out in a separate motion, but has pointed to no requirement in any applicable rule that would require the Trustee to list each request for relief in a separate motion. There is no such requirement. The format for a motion in a contested matter is governed by Federal Rules of Bankruptcy Procedure 9004 and 9013. Rule 9004 provides that "[e]ach paper filed shall contain a caption setting forth the name of the court, the

title of the case, the bankruptcy docket number, and a brief designation of the character of the paper." Fed. R. Bankr.P. 9004(b). Rule 9013 provides that a motion shall state the grounds therefor with particularity and set forth the relief or order sought. Trustee's motion complies with those Rules, and Debtor's Motion to strike on this basis has no merit.

### Substantive Issue

The main issue presented is whether the Trustee can, under any circumstances, establish a right to portions of Debtor's contingent fees that may be received post-petition to the extent they compensate for pre-petition work.

Debtor argues under Illinois law that the Trustee has no possible right to contingent fees due to Debtor under any pre-petition contract as such fees are not and cannot as a matter of law be or become "property of the [bankruptcy] estate." Moreover, he asserts, even if such fees might be part of the bankruptcy estate, as a matter of fact, no such fees were earned here.

■■■ "Property of the estate" is defined broadly under § 541 to include all legal and equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). Conversion of a case from ·one Bankruptcy Code Chapter to another does not change the date of case commencement. 11 U.S.C. § 348(a). "Commencement of the case" occurred on April 16, 1996, on the date of filing the original petition. See 11 U.S.C. § 301 (voluntary case commenced by filing petition with bankruptcy court). Thus, Debtor's bankruptcy estate consists of all Debtor's legal and equitable interests in property as of April 16, 1996.

■■■ It is correct, as Debtor argues, that property of the estate does not include post-petition earnings. 11 U.S.C. § 541(a)(6). Still, post-petition payments for services actually performed or income actually earned pre-petition do comprise property of the bankruptcy estate. Calder v. Segal (In re Calder), 94 B.R. 200, 202 (Bankr.D.Utah 1988), aff'd, 912 F.2d 454 (10th Cir.1990) (citing Matter of Hellums, 772 F.2d 379 (7th

Cir.1985)) (additional citations omitted). The test is "whether the after-acquired property is 'sufficiently rooted in the pre-bankruptcy past.'" Calder, 94 B.R. at 202; see also In re Burkholder, 177 B.R. 260 (Bankr.N.D.Ohio 1995); In re Meade, 84 B.R. 106 (Bankr. S.D.Ohio 1988).

■■■ The legal issue presented is whether post-petition payments that may be received post-bankruptcy under Debtor's pre-petition contingency fee agreements with his clients are part or may become part of the bankruptcy estate. In general, contingent fee contracts are non-assumable. Watts v. Williams, 154 B.R. 56, 58 (S.D.Tex.1993); Calder, 94 B.R. at 203, 11 U.S.C. § 365. However, such contracts between a debtor-attorney and the debtor's client do have value on the date of filing the bankruptcy petition. A Fifth Circuit opinion held under very similar circumstances that, while the lawyer's contingent fee agreements do not fall into the bankruptcy estate, fees earned prior to the date of bankruptcy filing do. See also Turner v. Avery, 947 F.2d 772, 774 (5th Cir.), reh'g denied, (1991), cert. denied, 504 U.S. 985, 112 S.Ct. 2966, 119 L.Ed.2d 587 (1992); Banner v. Bagen, 201 B.R. 642, 643 (S.D.N.Y.1996). The value of fees earned prior to bankruptcy is determinable on a quantum meruit basis by measuring the value and worth of the legal services performed both before and after the bankruptcy filing. Turner, 947 F.2d at 774. The term quantum meruit literally means "as much as he deserves." Muller v. Jones, 243 Ill.App.3d 711, 714, 184 Ill.Dec. 244, 246, 613 N.E.2d 271, 273 (1993). There is, however, no way to measure those values until the fee is earned, liquidated, and due.

Such a view is entirely consistent with Illinois law dealing with contingent fee agreements with attorneys. "Under Illinois law, a client may discharge his attorney at any time, with or without cause." Rhoades v. Norfolk and Western Railway Co., 78 Ill.2d 217, 227–28, 35 Ill.Dec. 680, 685, 399 N.E.2d 969, 974 (1979). An attorney discharged without cause is not entitled to recover under the contingency contract, but may recover reasonable fees from the former client for services rendered before discharge, on a

quantum meruit basis. *Id.* at 229, 35 Ill.Dec. at 685, 399 N.E.2d at 974. *See also Kannewurf v. Johns,* 260 Ill.App.3d 66, 71, 198 Ill.Dec. 381, 384, 632 N.E.2d 711, 714 (1994); and *Muller,* 243 Ill.App.3d at 714, 184 Ill.Dec. 244, 613 N.E.2d 271.

In some circumstances, an attorney may be entitled to quantum meruit compensation even when the attorney withdraws from client representation. *Kannewurf,* 260 Ill. App.3d at 71, 198 Ill.Dec. at 384, 632 N.E.2d at 714. *See also Reed Yates Farms. Inc. v. Yates,* 172 Ill.App.3d 519, 122 Ill.Dec. 576, 526 N.E.2d 1115, *leave to appeal denied,* 122 Ill.2d 593, 125 Ill.Dec. 235, 530 N.E.2d 263 (1988) (Table) (attorney who withdrew because of client's failure to pay past-due retainer received quantum meruit fee award) *(cited in Kannewurf,* 260 Ill.App.3d at 72, 198 Ill.Dec. at 385, 632 N.E.2d at 715); *Leoris and Cohen. P.C. v. McNiece,* 226 Ill. App.3d 591, 597, 168 Ill.Dec. 660, 665, 589 N.E.2d 1060, 1065 (1992) (complete breakdown in attorney-client relationship is cause for withdrawal from contingent fee case, but quantum meruit fee award still appropriate).

Debtor argues that an attorney does not have a quantum meruit claim unless and until he is terminated. His argument is that he had no such quantum meruit claim when bankruptcy was filed because at that time he had not been discharged from service. However, as earlier stated, a quantum meruit claim for attorney's fees is not dependent on an attorney's discharge from a case. Quantum meruit awards have been made in cases of attorney withdrawal. Moreover, quantum meruit awards are based on "the implied promise of a recipient of services to pay for those services of value to him." *Leoris & Cohen,* 226 Ill.App.3d at 595, 168 Ill.Dec. at 664, 589 N.E.2d at 1064. Without such an award, under Illinois law "the recipient would be unjustly enriched if he were able to retain the services without paying for them." *Id.* Under bankruptcy law, the fact that the amount of the award was undetermined at the time the petition was filed is irrelevant since property of the estate includes all legal and equitable interests of the debtor in property. 11 U.S.C. § 541(a)(1).

Debtor cites two cases in support of his argument that a contingent fee can only be collected as a result of a favorable settlement or judgment. *See In re Doyle,* 144 Ill.2d 451, 163 Ill.Dec. 515, 581 N.E.2d 669 (1991), and *In re Gerard,* 132 Ill.2d 507, 139 Ill.Dec. 495, 548 N.E.2d 1051 (1989) (an attorney is only entitled to its contingent fee when the attorney successfully champions his or her client's rights). However, under Illinois law, a contingency fee and a quantum meruit fee are two separate and distinct creatures. *In re Estate of Callahan,* 144 Ill.2d 32, 40–41, 161 Ill.Dec. 339, 342, 578 N.E.2d 985, 988 (1991). When an attorney hired on a contingent fee basis is discharged, the contingent fee arrangement may no longer be operative, but the attorney is still entitled to reasonable compensation for services performed until the discharge based upon quantum meruit. *Id.* In that circumstance, successful resolution of the claim which the lawyer was retained to pursue is not required for the attorney to recover some compensation.

Thus, the Trustee has a possible quantum meruit claim on behalf of the bankruptcy estate against any funds Debtor has received or may yet receive for services performed pursuant to pre-petition fee arrangements. Factors for determining quantum meruit fees include time and labor required, the attorney's skill and standing, the nature of the cause and the novelty and difficulty of the subject matter, the degree of responsibility in managing the cause, the usual and customary charge in the community, and the benefits resulting to the client. *Muller,* 243 Ill. App.3d at 714, 184 Ill.Dec. at 246–47, 613 N.E.2d at 273–74 (citations omitted). More specifically, it is apparent that once Debtor's work on each case or claim is completed and the amount of his contingent fee is finally fixed, a hearing must be held here to receive evidence as to the scope and value of work performed by Debtor pre-petition and the value of services he performed following his bankruptcy filing. From such evidence may be determined the value of pre-petition work, thus fixing the portion of fee belonging to the bankruptcy estate.

Debtor disagreed with the authorities cited herein and asserted other authorities for his

argument that contingent attorney's fees are not property of the bankruptcy estate. However, the cases to which he cites are not pertinent.

He first cites to several cases for the contention that state law applies when imposing an equitable lien. *In re Stoecker*, 143 B.R. 118 (Bankr.N.D.Ill.), *aff'd*, 143 B.R. 879 (N.D.Ill.1992), *aff'd in part, vacated in part,* 5 F.3d 1022 (7th Cir.), *reh'g denied,* (1993); *In re Morken*, 182 B.R. 1007 (Bankr.D.Minn. 1995); *In re Markos Gurnee Partnership*, 163 B.R. 124 (Bankr.N.D.Ill.1993). But Trustee is not seeking to impose any equitable lien for attorney's fees based upon the contingent fee arrangements. Moreover, the Illinois attorney lien statute is in addition to, and not instead of, the common law remedy of quantum meruit. *Kannewurf*, 260 Ill. App.3d at 76, 198 Ill.Dec. at 387, 632 N.E.2d at 717.

Debtor also argues that contingency fees cannot be part of the bankruptcy estate as that would sanction illegal fee splitting. However, the Trustee does not seek illegal splitting of fees with non-attorneys; he seeks the inclusion of pre-petition assets in debtor's bankruptcy estate consisting of the quantum meruit value of pre-petition work that contributed to fees received post-petition.

Debtor's cited authorities in support of his fee splitting argument are inapplicable: *In re Marriage of Wilder*, 122 Ill.App.3d 338, 77 Ill.Dec. 824, 461 N.E.2d 447 (1983); *In re Marriage of Courtright*, 155 Ill.App.3d 55, 107 Ill.Dec. 738, 507 N.E.2d 891 (1987); *Head v. Head*, 168 Ill.App.3d 697, 119 Ill.Dec. 549, 523 N.E.2d 17 (1988); *In re Marriage of Talty*, 166 Ill.2d 232, 209 Ill.Dec. 790, 652 N.E.2d 330 (1995); *Powell v. Powell*, 231 Kan. 456, 648 P.2d 218 (1982). Those cases do not discuss fee splitting with non-attorneys, or quantum meruit claims based upon contingent fee agreements, or claims of a bankruptcy estate to pre-petition assets. Rather, they discuss whether in a divorce proceeding one spouse is entitled to reimbursement of his or her attorney's fees by the other spouse.

Finally, Debtor also cites to the "landmark case" *In re Marriage of Zells*, 143 Ill.2d 251, 157 Ill.Dec. 480, 572 N.E.2d 944 (1991) (husband's contingency attorney fees were not marital assets, but would be considered if future claim for maintenance was brought). He argues that the Illinois Supreme Court opinion in *Zells* "outlined the potential harms associated with fee-sharing arrangements between attorneys and non-attorneys." Debtor's Amended Objection at 16, n. 1. However, this authority is irrelevant to issues at bar. No fee splitting is sought here. Rather, Debtor's quantum meruit claims based on his pre-petition legal services rendered under contingent fee contracts, if they are ever liquidated, may comprise property of his bankruptcy estate. Those claims in pre-petition contingency fee arrangements are possible property of the estate, even though such claims cannot yet be quantified and are conditioned on Debtor's success.

However, Debtor is correct that such claims cannot be ordered turned over until evidentiary hearings are held to enable adjudication of the value of his pre-bankruptcy work as to each fee ultimately earned.

While the Trustee has argued that such quantum meruit claims may exist, he has not proven his claims as to particular fees. Because it is possible that the Trustee may be able to assert such claims on behalf of the bankruptcy estate, he has been allowed to investigate that possibility by orders providing for his access to appropriate information and has been allowed to inform parties against whom Debtor's clients are making claims of his possible claims on behalf of the bankruptcy estate against Debtor's fees should any become due.

In addition, the Order entered January 29, 1997, provides that Debtor is not to waive any claim for legal fees earned or reimbursed for pre-conversion clients.

The Trustee argued that he also needs an order vacating paragraph four of the September 30 Order prohibiting the Trustee from contacting Debtor's clients. Debtor and the parties against whom Debtor's clients assert claims are in possession of all of the information Trustee requires, and there is no need yet demonstrated to contact Debtor's clients.

**282**

### CONCLUSION

For reasons set forth above and by orders to be entered, the Trustee's motion for turnover and other relief will be denied without prejudice to reasserting same against specific fees or portions of fees claimed to be owing to Debtor when Trustee is prepared to establish specific claims thereto.

Nonetheless, the Trustee is entitled to protection against any dissipation of fee claims and fees against which he may make such claims. Therefore, Debtor has by earlier orders been barred from waiving claims for tees, and has been required to supply information to the Trustee concerning his contingent fee agreements held when bankruptcy was filed. Further, the Trustee has been allowed to inform parties against whom Debtor's clients have claims about the Trustee's asserted interest in Debtor's future fees.

The Trustee will also be supplied under Orders previously entered with information pertaining to any fees received by or on behalf of Debtor after April 16, 1996, for legal services rendered or costs expended by him on behalf of any client in existence prior to April 16, 1996.

However, Trustee has not demonstrated a need to contact Debtor's clients, and out of concern for the attorney-client privilege will not be allowed to do so unless and until such need is demonstrated and that privilege can be protected.